429 F.2d 1003
 74 L.R.R.M. (BNA) 2929, 63 Lab.Cas. P 11,030,
1970 Trade Cases P 73,276
 Alexander J. SALERNO and William Valentine, Plaintiffs-Appellants,
v.
AMERICAN LEAGUE OF PROFESSIONAL BASEBELL CLUBS, an
unincorporated association, Joseph E. Cronin, individually
and as President of the American League ofProfessional
Baseball Clubs, and Paul Porter, Defendants, Bowie Kuhn,
individually and asthe Commissioner of Baseball, Defendant-Appellee.
 No. 818, Docket 34653.
 United States Court of Appeals, Second Circuit.
 Argued May 26, 1970.
Decided July 13, 1970.
 
 Joseph Kelner, New York City, for plaintiffs-appellants.
 George S. Leisure, Jr., New York City (Donovan, Leisure, Newton & Irvine and Paul E. Goodspeed and Paul A. Crotty, New York City, of counsel), for appellee, Bowie Kuhn.
 Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Plaintiffs, former umpires in the American League of Professional Baseball Clubs, were discharged by the president of the League. Although he announced that this was for incompetence, plaintiffs claim 'the true and only reason' was their endeavor to organize the American League umpires for collective bargaining. Following an unfair labor practice charge on their part, the National Labor Relations Board issued a complaint under 8(a)(1) and (3) of the Act, Case No. 1-CA-6581, on March 26, 1970, and this has been referred to a Trial Examiner for hearing. See 180 N.L.R.B. No. 30 (Dec. 15, 1969), 38 L.W. 2351.
 
 
 2
 Before that the plaintiffs had filed a complaint in the District Court for the Southern District of New York. They named as defendants the American League of Professional Baseball Clubs; Joseph E. Cronin, its president; Bowie Kuhn, the Commissioner of Baseball; and Paul Porter, a well-known Washington attorney. Only Kuhn was served. The complaint contained two counts. The first alleged a claim under the Sherman and Clayton Acts, 15 U.S.C. 1, 2 & 15; the second asserted a claim for defamation. When Kuhn moved to dismiss for want of federal jurisdiction, plaintiffs maintained there was both federal question and diversity jurisdiction. finding neither, the district court granted the motion. Since the diversity claim has now been abandoned, all that is left is the claim under the antitrust laws.
 
 
 3
 Even if we were sure that professional baseball will be held subject to the antitrust laws, we would entertain serious doubt whether the complaint here stated a claim under them. Combining an assertion of general antitrust violation with a claim of injury from breach of contract or tort does not automatically make the latter a claim arising under the antitrust laws. As Judge Kaufman observed in a rather similar context, Molinas v. National Basketball Ass'n, 190 F.Supp. 241, 243 (S.D.N.Y.1961), a plaintiff in a civil antitrust action 'must establish a clear causal connection between the violation alleged and the injuries allegedly suffered.' See also Tepler v. Frick, 204 F.2d 506 (2 Cir. 1953). Wrongful discharge of an employee does not become an antitrust violation simply because the employer is a monopolist; the private right of action is conferred only for an injury 'by reason of anything forbidden in the antitrust laws,' 15 U.S.C. 15. Although the complaint has elaborate allegations of conspiracy in restraint of trade, there is nothing to indicate restrictive trade practices directed at umpires. In the nature of things these must be employed-- and discharged-- by a league rather than by a single club. The only pertinent allegations going beyond discriminatory discharge by the President of the American League are that Kuhn is employed as Commissioner by both the American and the National Leagues, that plaintiffs' discharge was with Kuhn's 'knowledge, permission and consent,' and that defendants 'did, in fact, restrain and monopolize * * * trade and commerce in violation of Sections 1 and 2 of the Sherman Act by means of a group boycott against plaintiffs.' Even the requisite liberal interpretation of these allegations does not overcome the great difficulty in finding that a claim was stated under such cases as Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), and Fashion Originators Guild of America v. FTC, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941). Moreover, plaintiffs' real grievance is their alleged discriminatory discharge in violation of the National Labor Relations Act, and this is being considered by the agency appointed for the purpose by Congress. Even assuming this claim somehow also encompasses a violation of the antitrust laws, which is highly doubtful, we would have the further question whether a federal court could consider it once the NLRB has begun proceedings. See Local Union No. 189, Amalgamated Meat Cutters, and Butcher Workmen of No. America, AFL-CIO v. Jewel Tea Co., 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965); cf. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
 
 
 4
 Apart from these exceedingly serious obstacles, plaintiffs recognize that they can prevail only if we should be willing to predict the likely overruling of the holdings in Federal Baseball Club of Baltimore, Inc. v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922), and Toolson v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953), that professional baseball is not subject to the antitrust laws. Cf. Green v. Board of Elections of City of New York,380 F.2d 445, 448 (2 Cir. 1967), and cases there cited. They say that changes in the economics of the sport even since Toolson, especially the increasing importance of revenues from interstate television broadcasts, make baseball's immunity from the antitrust laws more anomalous than ever. But the ground upon which Toolson rested was that Congress had no intention to bring baseball within the antitrust laws, not that baseball's activities did not sufficiently affect interstate commerce. Cf. Gardella v. Chandler, 172 F.2d 402, 407-408 (2 Cir. 1949). We freely acknowledge our belief that Federal Baseball was not one of Mr. Justice Holmes' happiest days, that the rationale of Toolson is extremely dubious and that, to use the Supreme Court's own adjuctives, the distinction between baseball and other professional sports is 'unrealistic,' 'inconsistent' and 'illogical.' Radovich v. National Football League, 352 U.S. 445, 452, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). We add that Boys Mkts., Inc. v. Retail Clerk's Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, decided June 1, 1970, overruling Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), despite Congress' failure to act on invitations to do so, may presage a change from the attitude with respect to such inaction that was expressed in Toolson, 346 U.S. at 357, 74 S.Ct. 78, which Mr. Justice Black in dissent invoked to no avail, 398 U.S. at 255, 90 S.Ct. at 1595. However, putting aside instances where factual premises have all but vanished and a different principle might thus obtain, we continue to believe that the Supreme Court should retain the exclusive privilege of overruling its own decisions, save perhaps when opinions already delivered have created a near certainty that only the occasion is needed for pronouncement of the doom. While we should not fall out of our chairs with surprise at the news that Federal Baseball and Toolson had been overruled, we are not at all certain the Court is ready to give them a happy despatch.
 
 
 5
 Affirmed.