644 So.2d 1021 (1994)
Robert A. BUTTERWORTH, etc., Petitioner,
v.
NATIONAL LEAGUE OF PROFESSIONAL BASEBALL CLUBS, et al., Respondents.
No. 82287.
Supreme Court of Florida.
October 6, 1994.
Rehearing Denied November 17, 1994.
Robert A. Butterworth, Atty. Gen., and Jerome W. Hoffman and Louis Hubener, Asst. Attys. Gen., Tallahassee, for petitioner.
Gregory A. Presnell and Kathryn B. Nixon of Akerman, Senterfitt & Eidson, P.A., Orlando, and Robert J. Kheel of Willkie, Farr & Gallagher, New York City, for respondents.
Tony Cunningham of Cunningham Law Group, P.A., Tampa, amicus curiae for Frank L. Morsani, individually, and Tampa Bay Baseball Group, Inc.
Stephen F. Ross, University of Illinois, College of Law, Champaign, IL, amici curiae for Consumer Federation of America and Sports Fans United.
HARDING, Justice.
We have for review Butterworth v. National League of Professional Baseball Clubs, 622 So.2d 177 (Fla. 5th DCA 1993), in which the Fifth District Court of Appeal certified the following question to be one of great public importance:
DOES THE ANTITRUST EXEMPTION FOR BASEBALL RECOGNIZED BY THE UNITED STATES SUPREME COURT IN FEDERAL BASE BALL CLUB OF BALTIMORE, INC. v. NATIONAL LEAGUE OF PROFESSIONAL BASE BALL CLUBS, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922) AND ITS PROGENY EXEMPT ALL DECISIONS INVOLVING THE SALE AND LOCATION OF BASEBALL FRANCHISES *1022 FROM FEDERAL AND FLORIDA ANTITRUST LAW?[[1]]
Id. at 178. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. We answer the certified question in the negative and quash the decision below because we find that baseball's antitrust exemption extends only to the reserve system.
This case arose from the unsuccessful attempt of a group of investors to purchase the San Francisco Giants Major League Baseball franchise and relocate it to Tampa Bay, Florida. After the baseball owners voted against approval of the sale to the Tampa investors and the Giants owner signed a contract to sell the franchise to a group of San Francisco investors, Florida Attorney General Robert Butterworth (Attorney General) issued antitrust civil investigative demands (CIDs) to the National League of Professional Baseball Clubs and its president William D. White (National League) pursuant to section 542.28, Florida Statutes (Supp. 1992).[2] According to the CIDs, the specific focus of the investigation was "[a] combination or conspiracy in restraint of trade in connection with the sale and purchase of the San Francisco Giants baseball franchise."
The National League petitioned the Circuit Court of the Ninth Judicial Circuit to set aside the CIDs, based upon an assertion that the matters under investigation involved a transaction exempt from the application of both federal and state antitrust laws. The Attorney General filed a response asserting that baseball's antitrust exemption is not applicable to activities relating to the transfer of a baseball franchise. The Attorney General also filed a cross-motion to compel compliance with the CIDs. After receiving written memoranda and hearing argument by the parties, the circuit court issued an order quashing the CIDs. The circuit court determined that "[d]ecisions concerning ownership and location of baseball franchises clearly fall within the ambit of baseball's antitrust exemption." On appeal, the district court affirmed that order and certified the question to this Court.
The United States Supreme Court originally recognized some form of antitrust law exemption for baseball in Federal Baseball Club, Inc. v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922). That case involved an antitrust action by a baseball club of the Federal League against the National League and the American League, alleging a conspiracy to monopolize the baseball business. The Supreme Court concluded that the federal antitrust laws were inapplicable because the business at issue, "giving exhibitions of base ball," did not involve interstate commerce. Id. at 208-09, 42 S.Ct. at 466. Although the Supreme Court reaffirmed that exemption in the subsequent case of Toolson v. New York Yankees, Inc., 346 U.S. 356, 357, 74 S.Ct. 78, 98 L.Ed. 64 (1953), it did so "[w]ithout re-examination of the underlying issues." Instead, the Supreme Court affirmed the judgments of the courts of appeals in three consolidated cases brought against baseball owners[3] on the authority of Federal Baseball, "so far as that decision determines that Congress had no intention of including the business of baseball within the scope of the federal antitrust laws." Toolson, 346 U.S. at 357, 74 S.Ct. at 79. The Supreme Court noted that Congress "has not seen fit to bring such business under [the antitrust] laws by legislation" and concluded that any such application "should be by legislation." Id. In a later case, the Supreme Court described Toolson as "a narrow application *1023 of the rule of stare decisis." United States v. Shubert, 348 U.S. 222, 230, 75 S.Ct. 277, 99 L.Ed. 279 (1955) (finding that business built around the performance of local theatrical productions is subject to antitrust laws).
In response to attempts to extend the reasoning of Federal Baseball beyond the context of baseball, the Court specifically limited the antitrust exemption to "the business of organized professional baseball." Radovich v. National Football League, 352 U.S. 445, 451, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957) (refusing to extend the antitrust exemption to football); Haywood v. National Basketball Ass'n, 401 U.S. 1204, 1205, 91 S.Ct. 672, 673, 28 L.Ed.2d 206 (1971) ("Basketball ... does not enjoy exemption from the antitrust laws."); United States v. International Boxing Club, 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed. 290 (1955) (same as to boxing business).
The Supreme Court directly addressed the baseball exemption for the third and most recent time in Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972). In Flood, a player challenged professional baseball's reserve system,[4] whereby the player was traded to another franchise without his knowledge or consent. The Supreme Court affirmed the lower court's judgment dismissing the complaint based upon the controlling authority of Federal Baseball and Toolson. The Supreme Court also made a number of findings, including the following: professional baseball is a business engaged in interstate commerce; the exemption from antitrust laws is an exception, an anomaly, and an aberration confined to baseball; the exemption is an established one that is entitled to the benefits of stare decisis; and any change in the exemption should come through legislative action and should be prospective only in operation. Flood, 407 U.S. at 282-83, 92 S.Ct. at 2111-12.
Based upon the Supreme Court's trilogy of baseball cases, baseball clearly enjoys some form of exemption from antitrust laws. However, there is some disagreement as to the scope of that exemption. Compare, Charles O. Finley & Co. v. Kuhn, 569 F.2d 527, 541 (7th Cir.), cert. denied, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978) ("[T]he Supreme Court intended to exempt the business of baseball, not any particular facet of that business, from the federal antitrust laws.") with Piazza v. Major League Baseball, 831 F. Supp. 420, 438 (E.D.Pa. 1993) ("[A]ntitrust exemption created by Federal Baseball is limited to baseball's reserve system.").
The parties in the instant case view the parameters of the exemption from equally differing perspectives. The Attorney General contends that the exemption only applies to the reserve clause system. The National League asserts that the exemption applies broadly to "the business of baseball," which includes decisions regarding the sale and location of franchises.
Several federal courts have interpreted the scope of the exemption broadly. For example, the United States Court of Appeals for the Seventh Circuit concluded that the "Supreme Court intended to exempt the business of baseball, not any particular facet of that business, from the federal antitrust laws." Finley, 569 F.2d at 541; accord Professional Baseball Schs. & Clubs, Inc. v. Kuhn, 693 F.2d 1085, 1086 (11th Cir.1982) (concluding that business of baseball, including franchise location system, is exempt from antitrust laws); Salerno v. American League of Professional Baseball Clubs, 429 F.2d 1003 (2d Cir.1970), cert. denied, 400 U.S. 1001, 91 S.Ct. 462, 27 L.Ed.2d 452 (1971) (finding exemption applicable to former umpires' claim of antitrust violation following umpires' discharge).
However, in a recent decision involving two Pennsylvania citizens who were part of the same investment group as the Tampa Bay investors in the instant case the United States District Court for the Eastern District of Pennsylvania stated that the "antitrust *1024 exemption created by Federal Baseball is limited to baseball's reserve system".[5]Piazza, 831 F. Supp. at 438.[6] After an extensive analysis of the Supreme Court's baseball trilogy, the Piazza court concluded that Flood invalidated the rule stare decisis of Federal Baseball and Toolson and left only the result stare decisis under the facts of the case, namely the exemption of baseball's reserve system from federal antitrust law.[7]
Even though the Piazza court is the only federal court to have interpreted baseball's antitrust exemption so narrowly, the language of the Flood opinion supports such an interpretation. In Flood, the Supreme Court itself characterized the trilogy of cases in this manner: "For the third time in 50 years the Court is asked specifically to rule that professional baseball's reserve system is within the reach of the federal antitrust laws." Flood, 407 U.S. at 259, 92 S.Ct. at 2103 (emphasis added). In discussing the reasons why the Supreme Court followed Federal Baseball in Toolson, the Court cited baseball's development between 1922 and 1953 "upon the understanding that the reserve system was not subject to existing federal antitrust laws." Flood, 407 U.S. at 274, 92 S.Ct. at 2108 (emphasis added). In listing its eight findings regarding baseball and the exemption, the Court twice described the exemption as applying to the "reserve system." Id. at 282-83, 92 S.Ct. at 2112. First, in concluding that baseball's status is "an exception and an anomaly" and that "Federal Baseball and Toolson have become an aberration confined to baseball," the Court described baseball's "reserve system [as] enjoying exemption from federal antitrust laws." Flood, 407 U.S. at 282, 92 S.Ct. at 2112 (emphasis added). Second, the Court concluded that "Congress as yet has had no intention to subject baseball's reserve system to the reach of the antitrust statutes." Id. at 283, 92 S.Ct. at 2112 (emphasis added).
The Supreme Court also rejected the rationale of Federal Baseball when it stated that "professional baseball is a business ... engaged in interstate commerce." Flood, 407 U.S. at 282, 92 S.Ct. at 2112. The Piazza opinion includes a thorough analysis of what this rejection of the analytical underpinnings of Federal Baseball means to the precedential value of Federal Baseball and Toolson. The court concluded that those cases have no precedential value beyond the particular facts involved, i.e., the reserve clause. Piazza, 831 F. Supp. at 436-38. The Piazza court also noted that the other federal cases which have construed the exemption broadly *1025 have not engaged in such an analysis of the Supreme Court's baseball trilogy. Id. at 438.
In Finley, the Seventh Circuit Court of Appeals rejected the plaintiff's argument that the exemption applies only to the reserve system. Finley, 569 F.2d at 540. The plaintiff argued that the Supreme Court's references to the reserve system in Flood supported a narrow interpretation of the exemption. Despite the references in Flood to the reserve system, the Finley court concluded that the language in the three baseball cases and Radovich shows that "the Supreme Court intended to exempt the business of baseball, not any particular facet of that business, from the federal antitrust laws." Finley, 569 F.2d at 541. The United States District Court for the Eastern District of Louisiana agreed with the Finley court's interpretation of the baseball exemption and rejected the "cramped view" of the Piazza court, even though it found the "reasoning impressive." New Orleans Pelicans Baseball, Inc. v. National Ass'n of Professional Baseball Leagues, Inc., No. 93-253, at 20, 1994 WL 631144 (E.D.La. Mar. 1, 1994) (order granting defendants' motion for summary judgment as to antitrust claims).
There is no question that Piazza is against the great weight of federal cases regarding the scope of the exemption. However, none of the other cases have engaged in such a comprehensive analysis of Flood and its implications. In fact, many of the cases simply state that baseball is exempt and cite to one or more of the baseball trilogy without any discussion at all. See, e.g., Portland Baseball Club, Inc. v. Kuhn, 491 F.2d 1101, 1103 (9th Cir.1974) ("[P]laintiff's claim for relief under the antitrust laws was properly dismissed."); Professional Baseball Schools, 693 F.2d at 1085-86 ("[T]he exclusion of the business of baseball from the antitrust laws is well established."). Although the Finley opinion does contain analysis and discussion, the court simply cites "business of baseball" language from the baseball trilogy and disregards the Supreme Court's references in Flood to the reserve system and its own characterization of the exemption as involving the reserve system. Finley, 569 F.2d at 541. Moreover, Finley contains no analysis of what implications the Flood findings have on the precedential value of Federal Baseball and Toolson.
The Supreme Court's determination in Flood that professional baseball "is engaged in interstate commerce," 407 U.S. at 282, 92 S.Ct. at 2112, directly contradicts the determination in Federal Baseball that baseball exhibitions are "purely state affairs" and thus do not constitute "commerce among the States." 259 U.S. at 208-09, 42 S.Ct. at 465. This rejection of the very reason that the Court recognized such an exemption in Federal Baseball seriously undercuts the precedential value of both Federal Baseball and Toolson. Based upon the language and the findings in Flood, we come to the same conclusion as the Piazza court: baseball's antitrust exemption extends only to the reserve system.[8]
Accordingly, we answer the certified question in the negative, quash the decision below, and remand this case for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and SHAW and KOGAN, JJ., concur.
OVERTON, J., concurs specially with an opinion, in which SHAW, J., concurs.
McDONALD, Senior Justice, dissents with an opinion.
OVERTON, Justice, specially concurring.
At the outset I believed that baseball franchises were exempt from any type of federal or state antitrust laws. I concur in the majority opinion, however, because I am now convinced that Piazza v. Major League Baseball, 831 F. Supp. 420 (E.D.Pa. 1993), which *1026 holds otherwise, properly analyzes the trilogy of decisions of the United States Supreme Court addressing this issue. See Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); Toolson v. New York Yankees, 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953); and Federal Baseball Club, Inc. v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922). In my view, any judicially created exemption must be strictly construed in its application because it grants a benefit not available to others. It is apparent to me that any exemption that exists does so only because of the doctrine of stare decisis. Whether the exemption is to be narrowly construed, as found by the Piazza court, or broadly construed, as determined by other federal courts, is a question that can be finally answered only by the United States Supreme Court.
Times have changed significantly since the exemption was initially created. Several other professional sports now operate in a manner similar to professional baseball but do not enjoy a similar antitrust exemption. All of these major professional sports teams are important business entities in the broad communities of interest in which they operate. In my personal view, why one professional sport would have a judicially created antitrust exemption, but others do not, is a question that defies legal logic and common sense.
The United States Supreme Court should determine whether (1) a judicially-created exemption for baseball is still viable and, (2) if the exemption exists, whether that exemption should be applied narrowly, as interpreted in Piazza, or broadly, as interpreted by Charles O. Finley & Co. v. Kuhn, 569 F.2d 527 (7th Cir.), cert. denied, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978). Now is the time for this question to be finally resolved and the United States Supreme Court should take jurisdiction of this case to do so.
SHAW, J., concurs.
McDONALD, Senior Justice, dissenting.
I would approve the decision under review and answer the certified question in the affirmative. In doing so, I adopt portions of the trial judge's order as follows:
The United States Supreme Court has held in three decisions that baseball is exempt from the antitrust laws. The exemption uniquely applies to professional baseball and quite clearly contradicts the entire existing body of law concerning the application of antitrust regulations. It continues to exist because it is a longstanding and "established aberration" in the law which is entitled to the benefit of stare decisis. Curtis C. Flood v. Bouie K. Kuhn, [407 U.S. 258] 92 S.Ct. 2099 [32 L.Ed.2d 728] (1972). Neither the Supreme Court nor Congress have seen fit to overturn the exemption.
While baseball's antitrust exemption clearly continues to exist, it is not unlimited in its scope. Because the exemption is aberrant and rests solely on stare decisis, lower courts have given it an increasingly narrow interpretation. The Attorney General urges that it should be applied only to the reserve clauses of player contracts. While the exemption is clearly not that narrow, it just as clearly does not apply to any and all activities which may have some attenuated relation with the business of baseball. Finly v. Kuhn, 569 F.2d 527 ([7th Cir.] 1978).
It is not the individuals involved with professional baseball that are exempt, nor the entity calling itself baseball, it is the business of baseball which is exempt. The exemption protects business activities which are directly related to the unique needs and characteristics of professional baseball. One area of business activity which has clearly and consistently been considered exempt is the matter of the structure of the league. The composition of the leagues, that is, where professional baseball is played and with whom, is a fundamental consideration of professional baseball and at the heart of its business activity. Decisions concerning ownership and location of baseball franchises clearly fall within the ambit of baseball's antitrust exemption.
... .

*1027 The Attorney General claims that there remains a factual uncertainty concerning the application of the antitrust exemption to the activities he seeks to investigate, and that the investigative demands are designed to resolve that uncertainty. Federal courts have previously determined that an agency's investigations should not be bogged down by premature challenges to its regulatory jurisdiction. F.T.C. v. Monahan, 832 F.2d 688 [1st Cir.1987]. Florida Statute 542.28 does grant the Attorney General broad powers to investigate suspected violations of state and federal laws, and this Court recognizes that it would generally be premature to apply an antitrust exemption at a subpoena enforcement hearing. However, if Baseball's decision to keep the Giants in San Francisco is exempt from antitrust laws, then the necessary discussions, negotiations, and associations leading to that decision must also be protected and exempted business activity. While the actions and decisions of baseball in the area of league structure may give rise to civil causes of action sounding in contract or tort, they cannot form the basis for violations of antitrust laws. No further investigation or discovery will change this basic fact. The application of baseball's exemption to antitrust laws in this area is clear and the Attorney General is without authority to investigate activity which is clearly exempt.
NOTES
[1] In the words of baseball great Yogi Berra, judicial review of baseball's antitrust exemption is "deja vu all over again." Familiar Quotations 754 (Justin Kaplan ed. 1992).
[2] Section 542.28(1), Florida Statutes (Supp. 1992), authorizes the Attorney General to issue a civil investigative demand (CID) to any person that the Attorney General has reason to believe may be in possession, custody, or control of documentary material or information relevant to a civil antitrust investigation. The CIDs may require that person to produce documents for inspection, to answer written interrogatories, or to give sworn testimony.
[3] In all three cases, the circuit courts of appeals affirmed the dismissal of the player's complaint based upon the baseball exemption. See Corbett v. Chandler, 202 F.2d 428 (6th Cir.1953); Kowalski v. Chandler, 202 F.2d 413 (6th Cir.1953); Toolson v. New York Yankees, 200 F.2d 198 (9th Cir.1952).
[4] As described by the United States Supreme Court, the reserve system "centers in the uniformity of player contracts; the confinement of the player to the club that has him under the contract; the assignability of the player's contract; and the ability of the club annually to renew the contract unilaterally, subject to a stated salary minimum." Flood v. Kuhn, 407 U.S. 258, 259 n. 1, 92 S.Ct. 2099, 2100, 32 L.Ed.2d 728 (1972).
[5] The court denied the defendants' motion to dismiss the antitrust claims based upon a baseball exemption. Piazza v. Major League Baseball, 831 F. Supp. 420, 441 (E.D.Pa. 1993). The court subsequently denied the defendants' motion to certify for immediate appeal the denial of that motion to dismiss the antitrust claims. Piazza v. Major League Baseball, 836 F. Supp. 269 (E.D.Pa. 1993). The case was scheduled for trial in September 1994. Piazza v. Major League Baseball, No. CIV.A.92-7173, 1994 WL 385062, at 1 (E.D.Pa. July 19, 1994) (denying plaintiff's motion to file an amended complaint adding the Tampa Bay baseball partnership as a plaintiff).
[6] The Piazza decision has been the object of both praise and criticism by legal observers. Compare Latour Rey Lafferty, The Tampa Bay Giants & the Continuing Vitality of Major League Baseball's Antitrust Exemption: A Review of Piazza v. Major League Baseball, 21 Fla.St.U.L.Rev. 1271 (1994) with Neal R. Stoll & Shepard Goldfein, The Narrowing of Baseball's Exemption, N.Y.L.J., Dec. 21, 1993, at 3-4.
[7] "Rule stare decisis" involves the "`Supreme Court's choice of [the applicable] legal standard or test'" while "result stare decisis" is the result reached by applying that legal standard to the particular facts of the case. Piazza v. Major League Baseball, 831 F. Supp. 420, 437-38 (E.D.Pa. 1993) (quoting Planned Parenthood v. Casey, 947 F.2d 682, 691-92 (3d Cir.1991), aff'd in part and rev'd in part on other grounds, ___ U.S. ___, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). As explained by the district court in Piazza, prior to Flood lower courts were bound by both the rule of Federal Baseball and Toolson (that the business of baseball is not interstate commerce and thus not within the Sherman Antitrust Act) and the result of those decisions (that baseball's reserve system is exempt from the antitrust laws). Id. Because Flood invalidated the rule of Federal Baseball and Toolson by declaring that baseball is interstate commerce, the Piazza court concluded that no rule from the earlier cases binds the lower courts as a matter of stare decisis. Piazza, 831 F. Supp. at 437-38. Instead, lower courts are only bound by the disposition of the case based upon the facts presented, namely that the reserve system is exempt from the antitrust laws. Id.
[8] Based upon our conclusion that baseball's antitrust exemption extends only to the reserve system, the Attorney General's CIDs to the National League regarding the sale and purchase of the San Francisco Giants baseball franchise may proceed in this case. However, our decision should not be considered a ruling on the merits of any antitrust claim against the National League. To once again quote the inimitable Yogi Berra, "It ain't over till it's over." Familiar Quotations 754 (Justin Kaplan ed. 1992).