John McCOY, et al., Plaintiffs,

v.

MAJOR LEAGUE BASEBALL, et al., Defendants.

No. C95–383D.

United States District Court, W.D. Washington, at Seattle.

Nov. 2, 1995.

Steve W. Berman, Hagens & Berman, Seattle, WA, for plaintiffs.

David J. Burman, Bart Jay Waldman, Perkins Coie, Seattle, WA, Robert J. Kheel, Willkie Farr & Gallagher, New York City, for defendants.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

DIMMICK, Chief Judge.

THIS MATTER comes before the Court on plaintiffs' motion for summary judgment and defendants' motion to dismiss. Plaintiffs seek summary judgment as to the anticipated defenses of antitrust exemption and nonstatutory labor exemption. Not surprisingly, defendants seek dismissal based on these two defenses. The Court, having considered the motion, memoranda, and affidavits submitted by the parties, and having heard oral argument, hereby grants defendants' motion and denies plaintiffs' motion.

## I

On December 31, 1993, the collective bargaining agreement between the twenty-eight Major League Clubs (the "Owners") and the Major League Baseball Players Association (the "Players Association") expired. When the Owners and the Players Association were unable to agree on a new contract, the players went on strike, resulting in the cancellation of the remainder of the 1994 major league baseball season, the 1994 World Series, and a portion of the 1995 season.

The Owners and the Players Association each filed unfair labor practice charges with the National Labor Relations Board (the "NLRB"). The NLRB filed a complaint against the Owners alleging an unfair labor practice and seeking a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). Finding reasonable cause for the NLRB to conclude that the Owners had engaged in an unfair labor practice, a district court granted a temporary injunction to preserve the status quo. *See Silverman ex rel. National Labor Relations Board v. Major League Baseball Player Relations Comm., Inc.,* 880 F.Supp. 246 (S.D.N.Y.1995), *aff'd,* 67 F.3d 1054 (2d Cir.1995). The injunction reinstated the terms of the expired collective bargaining agreement until (1) a new agreement is reached, (2) the NLRB renders a final disposition of the related administrative matter currently pending, or (3) the district court finds that the parties are at an impasse. *See Silverman,* 880 F.Supp. at 261.

The instant suit arises out of the alleged unfair labor practice of the owners. The plaintiffs are divided into two as yet uncerti-

fied classes: (1) fans of baseball (the "fans"),[1] and (2) businesses (such as restaurants) that operate within the vicinity of a baseball stadium (the "businesses").[2] The plaintiffs allege that the actions of the defendants (the 28 major league teams, the American League, the National League, the Office of the Commissioner of Baseball, and "Major League Baseball") violated antitrust laws. They seek monetary and injunctive relief.

Defendants bring a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). They assert that the claim is barred by baseball's antitrust exemption and by the nonstatutory labor exemption. In addition, they contend that plaintiffs lack antitrust standing to bring this action.

Anticipating the first two defenses, plaintiffs seek summary judgment on the issue of whether defendants can raise either the antitrust exemption defense or the nonstatutory labor exemption. Plaintiffs interpret the antitrust exemption narrowly and contend that it does not apply here. Plaintiffs also contend that the labor negotiation strategy defense is not applicable because defendants' conduct in violation of the collective bargaining agreement bars application of that defense. The fans contend that they have standing as consumers of baseball, while the businesses contend that they have standing under the five-factor analysis of *Associated General Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

## II

■ The instant motions raise a purely legal question: Whether as a matter of law certain defenses apply. Thus, either the standard for summary judgment or the standard for dismissal pursuant to Rule 12(b)(6) may be applied. *See* Rule 56(c) (summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judg-

ment as a matter of law."); Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1355, at 291 (2d ed. 1990) (motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint). In any event, summary dismissal of antitrust claims is disfavored. *Western Concrete Structures Co. v. Mitsui & Co.*, 760 F.2d 1013, 1016 (9th Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).

## III

■ The first question that the Court must resolve is whether the antitrust exemption is applicable to the business of baseball. That question can be answered by examining three Supreme Court cases. In *Federal Baseball Club of Baltimore, Inc. v. National League of Professional Baseball Clubs*, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922), the Supreme Court "held that the business of providing public baseball games for profit between clubs of professional baseball players was not within the scope of the federal antitrust laws." *See Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 357, 74 S.Ct. 78, 79, 98 L.Ed. 64 (1953). Noting thirty years of Congressional inaction in which the business of baseball developed under that rule, the Court in *Toolson* declined to overrule *Federal Baseball*, deferring instead to Congress. *Toolson*, 346 U.S. at 356–57, 74 S.Ct. at 78–79. Nearly twenty years later in *Flood v. Kuhn*, 407 U.S. 258, 282, 92 S.Ct. 2099, 2111, 32 L.Ed.2d 728 (1972), the Court "adhere[d] once again to *Federal Baseball* and *Toolson* and to their application to professional baseball," because by lengthy "positive inaction," Congress clearly indicated that it did not disapprove of those decisions. *Flood*, 407 U.S. at 283–84, 92 S.Ct. at 2112–13. The Court again explicitly invited Congressional action: "[W]hat the Court said in *Federal Baseball* in 1922 and what it said in *Toolson* in 1953, we say again here in 1972: the remedy, if any is indicated, is for congressional, and not judicial, action." *Flood*, 407 U.S. at 285, 92 S.Ct. at 2113; *see also id.* at

---

1. The class representatives for the fans are Martin B. Friend, a season ticket holder of forty years, and John McCoy who annually attends twenty-five to thirty home games of the Seattle Mariners.

2. The class representative for the businesses is Trattoria Mitchelli, a restaurant located near the Kingdome.

285–86, 92 S.Ct. at 2113–14 (Burger, C.J. concurring).

Despite the Court's repeated invitations, Congress has not acted to eliminate the antitrust exemption. The scope of that exemption, as created in *Federal Baseball,* was stated in *Toolson:* "[T]he business of providing public baseball games for profit between clubs of professional baseball players was not within the scope of the federal antitrust laws," *Toolson,* 346 U.S. at 357, 74 S.Ct. at 79. That scope was repeated in *Flood:* " 'Congress had no intention of including *the business of baseball* within the scope of the federal antitrust laws.' " 407 U.S. at 285, 92 S.Ct. at 2113 (quoting *Toolson,* 346 U.S. at 357, 74 S.Ct. at 79) (emphasis added).

Despite the breadth of this holding, plaintiffs contend that two recent cases have recognized that the scope of the antitrust exemption was limited by *Flood.* *See Piazza v. Major League Baseball,* 831 F.Supp. 420 (E.D.Pa.1993); *Butterworth v. National League of Professional Baseball Clubs,* 644 So.2d 1021 (Fla.1994). In *Piazza,* the district court interpreted *Flood* to exempt only the player reserve clause system from antitrust laws. The *Piazza* court held that *Flood* limited baseball's antitrust exemption to the reserve clause. *Piazza,* 831 F.Supp. at 437. The court reasoned that before *Flood,* lower courts were bound both by the rule of *Federal Baseball*—that the business of baseball was exempt from antitrust laws—and the result of *Federal Baseball*—that the reserve clause system was exempt from antitrust laws. *Id.* The *Piazza* court concluded that because *Flood* held that baseball was interstate commerce, the rule of *Federal Baseball* was invalidated thereby leaving only the result of *Federal Baseball*—that the reserve clause was exempt from antitrust laws—as binding precedent. *Id.*

In *Butterworth,* the court parroted the reasoning of *Piazza.* While recognizing that "*Piazza* is against the great weight of federal cases regarding the scope of the exemption," the court accepted the *Piazza* reasoning over other precedent because "none of the other cases have engaged in such a comprehensive analysis of *Flood* and its implications." *Butterworth,* 644 So.2d at 1025.

This Court rejects the reasoning and results of *Piazza* and *Butterworth.* As *Butterworth* recognized, the great weight of authority recognizes that the scope of the antitrust exemption covers the business of baseball. *See, e.g., Portland Club, Inc. v. Kuhn,* 491 F.2d 1101, 1103 (9th Cir.1974); (citing *Flood* and holding that "[T]he plaintiff's claim for relief under the antitrust laws was properly dismissed."). The court in *Butterworth* was correct that none of these cases has presented much discussion on the issue. *See, e.g., id.* In addition, the courts in *Piazza* and *Butterworth* were correct that *Flood* referred to the reserve clause. Neither case, however, refers to the *Flood*'s concluding paragraph, which broadly states its holding as follows:

We repeat for this case what was said in *Toolson:*

> "Without re-examination of the underlying issues, the [judgment] below is affirmed on the authority of *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs,* supra, so far as that decision determines that Congress had no intention of including the business of baseball within the scope of the federal antitrust laws." 346 U.S. at 357, 74 S.Ct. at 79.

And what the Court said in *Federal Baseball* in 1922 and what it said in *Toolson* in 1953, we say again here in 1972: the remedy, if any is indicated, is for congressional, and not judicial, action.

*Flood,* 407 U.S. at 285, 92 S.Ct. at 2113.

In essence, plaintiffs invite this Court to invalidate a rule that was established by the Supreme Court over seventy years ago and that has been reaffirmed by the Supreme Court twice since its inception. This Court agrees with Judge Friendly's statement in *Salerno v. American League of Professional Baseball Clubs,* 429 F.2d 1003, 1005 (2d Cir. 1970), *cert. denied,* 400 U.S. 1001, 91 S.Ct. 462, 27 L.Ed.2d 452 (1971): "[W]e continue to believe that the Supreme Court should retain the exclusive privilege of overruling its own decisions." Plaintiffs vigorously argue that congressional silence is not tantamount to approval of the antitrust exemption.

While such silence is often not interpreted to be acquiescence, in the case of the antitrust exemption, the Supreme Court has treated it as such. In spite of repeated invitations by the high court to invalidate the rule, Congress has chosen not to repeal the judicially created antitrust exemption. Thus, this Court must apply the antitrust exemption established by *Federal Baseball, Toolson,* and *Flood.* Accordingly, the Court grants defendants' motion to dismiss.

## IV

 Even if the Court had accepted plaintiffs' invitation to narrowly construe the antitrust exemption, dismissal pursuant to Rule 12(b)(6) would have been appropriate because neither class of plaintiffs have standing to bring this action. Antitrust standing is given to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." 15 U.S.C.A. § 15 (West Supp.1995). The "any person" language of the statute is not to be read literally; rather, the Court must determine whether Congress intended to protect the interest asserted by the plaintiff. *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,* 890 F.2d 139, 145 (9th Cir.1989) (citing *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)). In making this determination, the Court "must 'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants and the relationship between them.'" *See id.* at 146 (quoting *Associated General Contractors,* 459 U.S. at 536, 103 S.Ct. at 908).

 As defendants assert, the fans lack standing. There is no evidence that the Owners intended to harm the fans. In addition, the injury suffered by the fans is not direct, that is, the injury can be fairly characterized as an indirect "ripple effect." *See Sullivan v. Tagliabue,* 25 F.3d 43, 51 (1st Cir.1994). Finally, the fans' damages do not arise out of the allegedly illegal conduct that the antitrust laws are intended to remedy. *See Los Angeles Memorial Coliseum Comm'n v. National Football League,* 791 F.2d 1356, 1365 (9th Cir.1986), *cert. denied,*

484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987).

 Similarly, the businesses lack standing. The antitrust laws were not intended to apply to "ripple effect" injury sustained by third parties. *See Los Angeles Memorial Coliseum Comm'n,* 791 F.2d at 1365. That the businesses have a symbiotic relationship with the business of baseball is insufficient to allow them to have antitrust standing.

## V

Defendants also contend that plaintiffs cannot assert a federal common law claim. As defendants contend, if any federal common law exists, it is the antitrust exemption created by *Federal Baseball,* and followed in *Toolson,* and *Flood.* Thus, this claim must also be dismissed.

## VI

This case presents a situation that the baseball sage Yogi Berra might describe as "deja vu all over again." *See Williams v. Ashland Eng'g Co.,* 45 F.3d 588, 589 n. 1 (1st Cir.) (citing Ralph Keyes, *Nice Guys Finish Seventh; Phrases, Spurious Sayings and Familiar Misquotations* 152 (1992)), *cert. denied,* —— U.S. ——, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995). The Supreme Court established and reaffirmed the business of baseball's exemption from the strictures of antitrust laws. In spite of repeated invitations by the high court, Congress has not yet seen fit to alter the rule under which the business of baseball has toiled for the last seventy years. Accordingly, this Court GRANTS defendants' motion to dismiss and DENIES plaintiffs' motion for summary judgment because (1) the antitrust exemption precludes plaintiffs' claims, and (2) the plaintiffs (both the fans and the businesses) lack standing to bring the claims. Resolution of these two issues makes any discussion of the nonstatutory labor exemption unnecessary. This cause of action is hereby DISMISSED with prejudice.

The Clerk of the Court is directed to send copies of this Order to all counsel of record and to enter judgment in favor of defendants.