**Frank L. MORSANI, et al., Plaintiffs,**

v.

**MAJOR LEAGUE BASEBALL,**
**et al., Defendants.**

**No. 99–1078–CIV–T–23E.**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 13, 1999.

Anthony W. Cunningham, Cunningham, Clark & Greiwe, P.A., Tampa, FL, for Plaintiffs.

John W. Foster, Sr., Baker & Hostetler, Orlando, FL, Robert Earl Banker, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Defendants.

## ORDER

MERRYDAY, District Judge.

This action was filed in state court in 1992. Plaintiffs Frank L. Morsani and the Tampa Bay Baseball Group, Inc. sued approximately 60 defendants, including the American League of Professional Baseball Clubs, Inc., the National League of Professional Baseball Clubs, Inc., an entity dubiously described as "Major League Baseball,"[1] a number of major league baseball teams, and a number of individuals associated with particular teams, the leagues, and the Office of the Commissioner of Baseball. The plaintiffs' original four-count complaint comprises three alleged causes of action for tortious interference with business relations and an alleged cause of action for violation of Florida's antitrust laws. The plaintiffs' claims arise from three separate efforts to obtain a major league baseball franchise in Tampa, Florida. The plaintiffs refer to these efforts respectively as the "Twins Deal" (involving an attempt to purchase and relocate the Minnesota Twins franchise), the "Rangers Deal" (a similar effort with respect to the Texas Rangers), and the "Expansion" (involving the award of a new franchise to the original owners of the Florida Marlins). Plaintiffs' Motion to Remand (Doc. 8) at pp. 2–5.

## THE DEFENDANTS' FIRST REMOVAL

The defendants initially removed this action in 1993. However, Judge Elizabeth A. Kovachevich remanded the case upon finding that the defendants failed to file their notice of removal within thirty days after the first receipt by one of the defendants of a copy of the complaint. *See* March 9, 1993 Order in Case No. 93–11–CIV–T–15C; 28 U.S.C. § 1446(b). This thirty-day "receipt rule" prevailed in the Eleventh Circuit and in several other circuits[2] until the Supreme Court's rejection of the rule in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). After remand and from 1993 until 1999, the case advanced in state court.[3]

## THE DEFENDANTS' SECOND REMOVAL

On May 5, 1999, the defendants again filed a notice of removal, relying on the second paragraph of 28 U.S.C. § 1446(b):

[A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

The defendants contend that *Murphy Brothers* is an "order or other paper" within the meaning of Section 1446(b) and, therefore, that the appearance of *Murphy Brothers* is an event triggering a renewed right of removal. Consistent with that assumption, the defendants filed their notice of removal within thirty days after publication of *Murphy Brothers*.

---

1. The plaintiffs allege that "Major League Baseball" is "a unique incorporated or unincorporated association, organization, alter ego, or the like," consisting of the American League, the National League, and the Office of the Commissioner of Baseball. Plaintiffs' Third Amended Complaint at p. 6. The defendants counter by "affirmatively assert[ing] that the Defendant designated as 'Major League Baseball' is a non-juridical entity and is, therefore, not a proper party." Defendants' Answer at p. 3. Notwithstanding seven years of litigation, the determination of whether a legally cognizable entity named "Major League Baseball" exists remains stubbornly unresolved.

2. *See Michetti Pipe Stringing, Inc. v. Murphy Brothers, Inc.*, 125 F.3d 1396 (11th Cir.1997), and cases cited therein at n. 6.

3. In *Morsani, et al. v. Major League Baseball, et al.*, Appeal No. 98–01327, the plaintiffs are appealing the trial court's award of summary judgment as to count I of the complaint but not appealing the summary judgment as to count IV. The Second District Court of Appeal stayed its proceedings following the removal of this action to federal court. Likewise, the Florida Supreme Court stayed its consideration of a question certified by the district court of appeal pursuant to Rule 9.125, Florida Rules of Appellate Procedure.

## DISCUSSION

### I.

Many courts have examined and rejected the defendants' argument that an order entered in another case may constitute an "order or other paper" pursuant to Section 1446(b).[4] These courts interpret Section 1446(b) to refer only to "an amended pleading, motion, order or other paper" that arises within the case for which removal is sought. The plain language of the statute, referring to the "receipt by the defendant, through service or otherwise," implies the occurrence of an event within the proceeding itself; defendants do not in the ordinary sense "receive" decisions entered in unrelated cases. Accordingly, the courts consistently hold that publication of an order on a subject that might affect the ability to remove an unrelated state court suit does not qualify as an "order or other paper" for the purposes of Section 1446(b).[5]

The two published decisions cited by the defendants that are contrary to this body of law are anomalous and unpersuasive.[6] Further, the defendants' reliance on *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir.1993); *Torres v. Ortega*, 1993 WL 62998 (N.D.Ill. Mar. 3, 1993); and *McCool v. American Red Cross*, 1992 WL 396805 (E.D.Pa. Dec.22, 1992) is ill-founded. In

**4.** *See, e.g., Lozano v. GPE Controls*, 859 F.Supp. 1036, 1038 (S.D.Tex.1994) (the term "other paper" refers to papers generated within the specific state proceeding to be removed and not other unrelated judicial opinions that might suggest removability); *Kocaj v. Chrysler Corp.*, 794 F.Supp. 234, 236 (E.D.Mich.1992) (circuit court of appeals decision was not "other paper" making action removable); *Johansen v. Employee Benefit Claims, Inc.*, 668 F.Supp. 1294, 1296 (D.Minn.1987) (Supreme Court decision is not an "order or other paper" making action removable; "other paper" refers solely to documents generated within the state court litigation itself); *Holiday v. Travelers Ins. Co.*, 666 F.Supp. 1286 (W.D.Ark.1987) (recent Supreme Court decisions were not "other papers" within the meaning of Section 1446(b)); *Hollenbeck v. Burroughs Corp.*, 664 F.Supp. 280, 281 (E.D.Mich.1987) (Supreme Court opinion in unrelated case did not constitute "order or other paper"); *Gruner v. Blakeman*, 517 F.Supp. 357, 360–61 (D.Conn.1981) (subsequent decision in a related case did not constitute "order or other paper"); *Avco Corp. v. Intern. Union*, 287 F.Supp. 132, 133 (D.Conn.1968) ("order or other paper" refers only to papers filed in proceeding itself, not to unrelated Supreme Court opinion); *see also O'Bryan v. Chandler*, 496 F.2d 403, 412 (10th Cir.), *cert. denied*, 419 U.S. 986, 95 S.Ct. 245, 42 L.Ed.2d 194 (1974) (noting *Avco* was rightly decided); *Metropolitan Dade County v. TCI TKR of South Florida*, 936 F.Supp. 958, 959 (S.D.Fla.1996) (Federal Communications Commission opinion was not an "order or other paper" making state court action removable).

**5.** This result is consistent with the well-established "voluntary/involuntary rule" applied to diversity cases removed pursuant to Section 1446(b). Under this rule, a state court case that is initially non-removable, but which subsequently becomes removable, may nevertheless not be removed unless the change that makes the case removable is the result of the plaintiff's voluntary act. *See, e.g., Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir.1992); *Insinga v. LaBella*, 845 F.2d 249 (11th Cir. 1988); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545 (5th Cir.1967). In both federal question and diversity cases, therefore, Section 1446(b) restricts defendants from removing most cases when the circumstance potentially allowing removal arises through no consequence of the plaintiff's actions.

**6.** *Smith v. Burroughs Corp.*, 670 F.Supp. 740, 741 (E.D.Mich.1987) (Supreme Court decision concerning ERISA preemption was an "order or other paper" allowing removal); *Davis v. Time Ins. Co.*, 698 F.Supp. 1317, 1322 (S.D.Miss.1988) (same). In both of these cases, the courts reacted to the Supreme Court's decisions in *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), which confirmed ERISA's broad preemption of state law claims. A compelling majority of courts, however, have not found the *Pilot Life* and *Metropolitan Life* decisions to constitute an "order or other paper" pursuant to 28 U.S.C. § 1446(b). *See, e.g., Johansen v. Employee Benefit Claims, Inc.*, 668 F.Supp. 1294, 1296 (D.Minn.1987) (Supreme Court's recent ERISA decisions did not give rise to a right of removal); *Holiday v. Travelers Ins. Co.*, 666 F.Supp. 1286 (W.D.Ark.1987) (same); *Hollenbeck v. Burroughs Corp.*, 664 F.Supp. 280, 281 (E.D.Mich.1987) (same). Moreover, the Eastern District of Michigan abandoned *Smith v. Burroughs Corp.* in ruling

each of these cases, the courts interpret the "order or other paper" language of Section 1446(b) in light of Supreme Court authority enabling the American Red Cross to remove tainted blood-products cases. *American National·Red Cross v. S.G.*, 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992).[7] As the Third Circuit explained in *Doe*, the Supreme Court's *S.G.* decision was "not simply an order emanating from an unrelated action but rather ... an unequivocal order directed to a party to the pending litigation, explicitly authorizing it to remove any cases it is defending." *Doe*, 14 F.3d at 202. Notably, the Third Circuit expressly distinguished its "extremely confined. [and] narrow" ruling from the line of cases cited in footnote 4 of this order. *Doe*, 14 F.3d at 202.[8]

 For the foregoing reasons, the defendants' argument that *Murphy Brothers* constitutes an "order or other paper" allowing removal of this action to federal court is rejected. *Murphy Brothers* neither revives a long-deceased removal right nor creates a new one.[9]

## II.

Of the four counts alleged in the plaintiffs' initial complaint, the plaintiffs and the defendants agree that federal question jurisdiction attaches, if at all, only as a result of the allegations in count IV, the plaintiffs' state law antitrust claim. Relying on the "antitrust exemption" professional baseball has long enjoyed,[10] the defendants argue that this Court should exercise jurisdiction over count IV because "federal law

precisely to the contrary in *Kocaj v. Chrysler Corp.*, 794 F.Supp. 234 (E.D.Mich.1992).

**7.** In *American National Red Cross v. S.G.*, the Supreme Court held that the Charter of the American National Red Cross, 36 U.S.C. § 2, authorized the Red Cross "to remove from state to federal court any state-law action it is defending." 505 U.S. at 248, 112 S.Ct. at 2467 (1992).

**8.** If Congress passed a law stating that in any case affecting the enterprise of major league baseball, the defendants may remove the action to a district court, a substantive right of removal would accrue at that time, and the *S.G.* decision would serve as a closer analogy. However, *Murphy Brothers* creates no new or renewed right of removal. *Murphy Brothers* refines a method for the computation of time pursuant to Section 1446(b). A change in the method of computation of time is neither a substantive right of removal nor a right to appeal or reconsider an earlier order regarding removal.

**9.** A peculiar irony of the defendants' position is that they essentially ask this Court to revisit a prior order that was not reviewable on appeal. *See* 28 U.S.C. § 1447(d). The defendants claim to enjoy a resurrected right of removal notwithstanding the fact that, even if Judge Kovachevich had remanded incorrectly in 1993 (that is, contrary to the then-prevailing law), the defendants were without an opportunity to appeal and were irreparably remanded—right or wrong. *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28, 116 S.Ct. 494, 496–97, 133 L.Ed.2d

461 ("As long as a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction ... a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)").

**10.** *See, e.g., Flood v. Kuhn*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); *Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953); *Federal Baseball Club of Baltimore, Inc. v. National League of Prof'l Baseball Clubs*, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922); *Prof'l Baseball Schools and Clubs, Inc. v. Kuhn*, 693 F.2d 1085, 1085–86 (11th Cir.1982) ("the exclusion of the business of baseball from the antitrust laws is well-established"); *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527 (7th Cir.1978); *Portland Baseball Club v. Kuhn*, 491 F.2d 1101 (9th Cir.1974); *Salerno v. American League of Professional Baseball Clubs*, 429 F.2d 1003 (2d Cir.1970), *cert. denied*, 400 U.S. 1001, 91 S.Ct. 462, 27 L.Ed.2d 452 (1971); *McCoy v. Major League Baseball*, 911 F.Supp. 454 (W.D.Wash. 1995); *New Orleans Pelicans Baseball, Inc. v. National Ass'n of Professional Baseball Leagues, Inc.*, 1994 WL 631144 (E.D.La. Mar. 1, 1994); *Minnesota Twins Partnership v. State*, 592 N.W.2d 847 (Minn.1999); *State v. Milwaukee Braves, Inc.*, 31 Wis.2d 699, 144 N.W.2d 1 (1966), *cert. denied*, 385 U.S. 1044, 87 S.Ct. 770, 17 L.Ed.2d 689 (1967). *See generally* Hon. Connie Mack and Richard M. Blau, *The Need for Fair Play; Repealing the Federal Baseball Antitrust Exemption*, 45 Fla. L.Rev. 201 (1993) (discussing the broad scope

has entirely preempted state antitrust law with regard to the business of baseball." Defendants' Opposition to Plaintiffs' Motion to Remand (Doc. 15) at p. 12. (The remaining counts of the complaint are state law tortious interference claims, which the defendants urge the Court to accept in an exercise of supplemental jurisdiction.)

■ In their memoranda, the parties do not address whether *Murphy Brothers* applies retroactively—that is, entitles a disappointed removing party to an opportunity to procure a reassessment of past law (and decisions rightly rendered in accord with it) in light of present law. The Supreme Court in *Murphy Brothers* did not address whether its decision applies retroactively or only prospectively, and other Supreme Court decisions dealing with retroactivity provide little guidance.[11] However, the retroactivity question in this case is effectively obscured or mooted by the fact that the plaintiffs' claims differ in a critical respect from the plaintiffs' claims at the time this case was first removed. Specifically, the state trial court awarded summary judgment to the defendants on count IV, the plaintiffs' antitrust claim. For this reason, even if *Murphy Brothers* applies retroactively, and even if Judge Kovachevich for this reason could be said to have ruled "wrongly," and even if the notice of removal in 1993 was somehow rendered timely, the Court would still remand this case for lack of subject matter jurisdiction.

This Court is bound to follow precedent favoring the broad exemption from antitrust liability afforded the business of professional baseball.[12] However, the plaintiffs' claims as now arrayed present no attack on baseball's antitrust exemption. After the defendants obtained summary judgment on count IV of the complaint, the plaintiffs chose not to appeal the trial court's decision.[13] Accordingly, the plain-

of the exemption). Notwithstanding abundant and controlling federal precedent to the contrary, *Butterworth v. National League of Professional Baseball Clubs*, 644 So.2d 1021 (Fla. 1994), purports to determine that professional baseball's antitrust exemption applies only to the player reserve system. Utterly foreign to the unquestionable weight of governing federal authority, this view, most charitably construed, amounts to a prediction that the Supreme Court of the United States (which, after all, determines such matters without reference to the inclinations of Florida's Supreme Court) will recede from *Flood v. Kuhn* in due course. Perhaps so. However, the boundaries of the federal antitrust laws in general and the baseball exemption in particular are not subject to accretion or reliction in response to a change of the tide at the Florida Supreme Court. Perhaps the only way this case might properly reside in federal court is if count IV is resuscitated and Florida's courts purport to apply *Butterworth*. Removal undoubtedly would follow.

11. Many commentators have noted that the Supreme Court's "retroactivity jurisprudence" has grown increasingly opaque in recent years. *See, e.g.,* K. David Steele, *Prospective Overruling and the Judicial Role After James B. Beam Distilling Co. v. Georgia*, 45 Vand. L.Rev. 1345 (1992); Paul E. McGreal, *Back to the Future: The Supreme Court's Ret-*

*roactivity Jurisprudence*, 15 Harv. J.L. & Pub. Pol'y 595 (1992).

12. Indeed, even when Congress passed the Curt Flood Act of 1998, Pub.L. 105–297, Oct. 27, 1998, 112 Stat. 2824, repealing the antitrust exemption as it applied to the employment of major league baseball players, Congress explicitly preserved the exemption for all matters "relating to or affecting franchise expansion, location or relocation, franchise ownership issues, including ownership transfers. . . ." 15 U.S.C. § 27a(b)(3). *See generally* Ted Curtis, *The Flood Act's Place in Baseball Legal History*, 9 Marq. Sports L.J. 403 (1999). Congress' preservation of the broadest aspects of the antitrust exemption in this recent legislation casts in sharp relief the misdirection in *Butterworth*, 644 So.2d 1021 (Fla.1994).

13. Although the plaintiffs filed a notice of appeal from the trial court's order granting summary judgments on both counts I and IV of their complaint, they declared in their "Statement of Judicial Acts to be Reviewed," filed pursuant to Rule 9.200(a)(3), Fla.R.App. P., that they challenged only the trial court's award of summary judgment on count I and not the summary judgment as to count IV. Accordingly, in their appellate brief, the plaintiffs expressed that they would "not quarrel with the Trial Court's disposition of the antitrust violations alleged in Count IV," and

tiffs no longer threaten the defendants with liability on the only count that provides the defendants' asserted basis for removal. If the purpose of baseball's broad antitrust exemption is to protect the enterprise of baseball from the threat of antitrust liability, that purpose is currently unobstructed by the presence of the remaining tortious interference claims in state court.

Rule 9.110(k), Florida Rules of Appellate Procedure, although not specifically cited in the memoranda of either party, provides the plaintiffs an opportunity to appeal the summary judgment concerning count IV either (1) promptly upon rendition of the partial final judgment or (2) on appeal from the final judgment "in the entire case." However, the defendants argue wrongly that "[s]ummary judgment against the plaintiffs on Count IV was ... not immediately appealable," and therefore "the plaintiffs' antitrust claim is very much 'in existence'." Defendants' Opposition to Plaintiffs' Motion to Remand (Doc. 15) at p. 10.[14] The plaintiffs counter that this argument is illusory, because their failure to appeal their antitrust claim before Florida's Second District Court of Appeal "estops" them from appealing the summary judgment on count IV in the future.[15] However, the plaintiffs' assertion is entire-

ly speculative and dependent on principles of state law that Florida's courts have not yet applied in this case.

## CONCLUSION

The plaintiffs' complaint, as it stands before this Court, presents no federal question. Nothing suggests that in 1993 Judge Kovachevich wrongly remanded this action as the law was then or that any different result attaches in 1999 as the law is now. Accordingly, the defendants' removal of this action was in 1993 distinctively tardy but is in 1999, at best, decidedly premature.

For these reasons, the plaintiffs' motion to remand (Doc. 8) is **GRANTED**. The Clerk is directed to (1) close the file and (2) terminate all pending motions.

made no argument challenging the summary judgment concerning count IV. Plaintiffs' reply memorandum (Doc. 16) at p. 2.

14. The defendants' assertion that the plaintiffs could not appeal the summary judgment order is incorrect, and reveals a misunderstanding of the relation between Rule 9.110(k), Fla.R.App.P., on the one hand, and *Mendez v. West Flagler Family Ass'n, Inc.*, 303 So.2d 1 (Fla.1974), on the other. *Mendez* and related cases govern the defendants' ability to appeal the partial final judgment respecting count IV as a "final order," notwithstanding the pendency of counts I, II, and III. Without respect to whether the partial final judgment on count IV is appealable as a "final order" under *Mendez*, Rule 9.110(k) preserves the

plaintiffs' right to appeal the adverse order on count IV from the final judgment in the case as a whole.

15. To underscore their abandonment of their antitrust claim, the plaintiffs filed a "Notice of Intent to Rely Upon Supplemental Pleading" (Doc. 21), attaching a notice of voluntary dismissal of count IV with prejudice, which the plaintiffs state they intend to file in state court. Because Rule 1.420(a), Florida Rules of Civil Procedure, provides that the plaintiffs may dismiss count IV only by stipulation or court order, the plaintiffs' notice (Doc. 21) is not entitled to binding effect (nor is it either a "pleading" of any kind, pursuant to Rule 1.100, Fla.R.Civ.P., or any sort of "supplement" within the applicable rules).