**In re Calvin WOOD, Debtor.**

**Calvin WOOD, Plaintiff,**

**v.**

**Mary Jane GHUSTE, Defendant.**

**Bankruptcy No. 97–07278–8C1.**
**Adversary No. 97–0755.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 26, 1998.

Calvin Wood, Nalcrest, FL, pro se.

Mary Jane Ghuste, Osage, WV, pro se.

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This adversary proceeding came on for hearing on December 9, 1997, of the plaintiff's motion for summary judgment (Document No. 5). The defendant, Mary Jane Ghuste, filed a pro se answer (Document No. 3), although she did not appear at the hearing, nor did she submit any Rule 56 materials in opposition to the motion.

### Facts

The summary judgment record made by the plaintiff contains the following facts that the court considers undisputed for purposes of the plaintiff's motion:

The plaintiff is a Chapter 11 debtor in this court. He is representing himself. Previously, the plaintiff was a lawyer licensed to practice law in West Virginia. During the time the plaintiff was practicing law there, the defendant retained him to handle a legal matter regarding the defendant's real property. The parties agreed that the plaintiff would handle the matter on a contingency fee basis. Prior to the trial of that matter, the defendant discharged the plaintiff as her attorney, and the plaintiff billed the defendant $45,000 for his legal services computed on an hourly basis. The defendant failed to pay, and the plaintiff filed an attorney's charging lien which created a lien on the defendant's real property. When the defendant sought to sell the real property against which the charging lien had been placed, the plaintiff consented to a release of the lien in consideration of $45,000 from the sales proceeds being placed in an escrow account of the closing agent.

At the hearing, the plaintiff orally disclosed additional facts that are not otherwise contained in the summary judgment record. Those additional facts are that the $45,000 amount that was initially held in escrow was later dispersed to the defendant pursuant to an order of the state court in West Virginia. The funds are therefore no longer held in escrow by the closing agent.

### Discussion

In this adversary proceeding, the plaintiff contends that the defendant owes him $60,482.95, although it is unclear how the $45,000 amount initially sought has grown to the higher figure. In Count I of the adversary complaint, the plaintiff contends that the $45,000 amount is property of the estate, and he seeks an order of this court that it be "turned over" to him, as debtor-in-possession, pursuant to the provisions of Section 542 of the Bankruptcy Code. In Count II of the complaint, the plaintiff alleges a simple breach of contract action, and he seeks judgment for damages in the amount of $45,000. In Count III of the complaint, the plaintiff seeks judgment in the amount of $45,000 for his services on a quantum meruit basis.

On these facts, it is first apparent that there is no basis for relief under Section 542 of the Bankruptcy Code. Although it is unclear whether the funds held in the escrow account after the plaintiff released the charging lien were funds as to which the plaintiff held a security interest, it is admitted by the plaintiff that those funds were released to the defendant upon the order of the West

Virginia court. There is no longer, therefore, a res as to which the plaintiff can contend that the estate has an interest. Because there is no specific fund as to which the debtor can claim a property interest, there can be no right to turnover under Section 542. Instead, this adversary proceeding is nothing but an action by the plaintiff/debtor-in-possession to collect a plain and ordinary prepetition account receivable. This, of course, is the plaintiff's theory of recovery in Counts II and III.

■ Section 1334(a) and (b) of Title 28, United States Code, give the district court[1] jurisdiction of "cases under title 11," "proceedings arising under title 11," proceedings "arising in" a case under title 11, and proceedings "related to" a case under title 11. Title 11, United States Code, of course, is the Bankruptcy Code, and the term "cases under title 11" refers merely to the bankruptcy petition itself filed pursuant to Sections 301, 302, or 303 of the Bankruptcy Code. *Robinson v. Michigan Consolidated Gas Co.,* 918 F.2d 579, 583 (6th Cir.1990); *In re Wood,* 825 F.2d 90, 92 (5th Cir.1987).

■ "[T]he term 'proceeding' is used to refer to the steps within the 'case' and to any subaction within the case that may raise a disputed or litigated matter." *Michigan Employment Security Commission v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1141 n. 14 (6th Cir.1991). The term "proceedings arising under title 11," therefore, describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11. *Id.* at 1144.

■ Proceedings "arising in" a case under title 11 are those that, by their very nature, could arise only in bankruptcy cases. *Id.* The term refers to those "administrative" matters that arise only in bankruptcy cases. In other words, although not based upon any right expressly created by title 11, these proceedings nevertheless would have no existence outside bankruptcy. *In re Wood,* 825 F.2d at 97.

■ A proceeding "related to" a case under title 11 is the kind of proceeding with the most tenuous jurisdictional basis. The Eleventh Circuit has adopted the test that was originally stated by the Third Circuit in *Pacor, Inc., v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), for determining whether a civil proceeding is sufficiently related to bankruptcy to confer federal jurisdiction. *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990). In our circuit, therefore:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [Citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate. [Emphasis in original].

*Pacor, Inc.,* 743 F.2d at 994. In *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 1499 n. 6, 131 L.Ed.2d 403 (1995), the Supreme Court discussed the slight differences among the circuits' definitions of "related to" jurisdiction and concluded only that "these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor."

■ A positive recovery in this adversary proceeding would affect the bankruptcy case solely by providing money to fund the debtor's plan. The proceeding meets no other jurisdictional standard. It is easily seen, therefore, that this adversary proceeding—involving nothing but the debtor's effort to collect a prepetition account—meets only the lowest jurisdictional basis provided by Section 1334. In other words, this is a proceeding merely "related to" the debtor's Chapter 11 bankruptcy case.

---

1. Pursuant to the provisions of 28 U.S.C. § 157(a), the district court has entered a standing, general order of reference. Thus, the bankruptcy court exercises the district court's bankruptcy jurisdiction.

■ Because this court merely has "related to" jurisdiction, this adversary proceeding is plainly a "non-core" proceeding within the meaning of 28 U.S.C. § 157(c)(1):

> If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding. [Emphasis in original].

*In re Wood*, 825 F.2d at 97. Although there is authority to the contrary, numerous courts have specifically held that proceedings to collect accounts receivable in which the underlying transaction occurred prepetition are within only the court's "related to" jurisdiction and are therefore non-core proceedings. *See, e.g., F & L Plumbing & Heating Co. v. N.Y. University (In re F & L Plumbing & Heating Co.),* 114 B.R. 370, 377 (E.D.N.Y. 1990); *Howison v. Country Hills Associates (In re W.G.M.C., Inc.),* 96 B.R. 5, 6 (Bankr. D.Me.1989). This represents the prevailing and better view.

■ The significance of the fact that this is a non-core proceeding rather than a core proceeding, of course, is that this court may only hear the matter and submit proposed findings of fact and conclusions of law to the district court. The court may not enter final orders and judgments. 28 U.S.C. 157(b)(1) and (c)(1). The handling of non-core proceedings, therefore, is unwieldy, requires duplication of efforts, and results in delays in reaching finality. Rarely does a non-core proceeding bring with it a benefit to the bankruptcy estate that outweighs these detrimental aspects.

Section 1334(c)(1) of Title 28, United States Code, permits the bankruptcy court to abstain from hearing a particular "proceeding arising under title 11" or "arising in" or "related to" a case under title 11. The statutory standards for this discretionary abstention are "the interest of justice" or "the interest of comity with State courts or respect for State law." *Id.*

■ Cases construing these standards give broad discretion to the court. The factors the court should consider in deciding whether to abstain under Section 1334(c)(1) are:

(1) The effect or lack thereof on the efficient administration of the estate if a court abstains.

(2) The extent to which state law issues predominate over bankruptcy issues.

(3) The difficulty or unsettled nature of applicable law.

(4) The presence of a related proceeding commenced in state court or other non-bankruptcy court.

(5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334.

(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.

(7) The substance rather than form of an asserted "core" proceeding.

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.

(9) The burden of the bankruptcy court's docket.

(10) The likelihood that the commencement of the proceeding in bankruptcy court involved forum shopping by one of the parties.

(11) The existence of a right to a jury trial, and

(12) The presence in the proceeding of non-debtor parties.

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1167 (9th Cir.1990); *Republic Readers Service Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service Inc.),* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987).

■ In applying these factors to the facts of this adversary proceeding, the court reaches the following conclusions:

As to the first three factors, there is no reason grounded in the administration of this bankruptcy case or of the estate for requiring this court to hear this adversary proceeding. Any court of competent jurisdiction can handle this simple contractual dispute. There are no bankruptcy law issues involved.

The issues involve solely the plaintiff's right to attorney's fees under West Virginia law. There are no unusual or difficult issues that would require this court's expertise, although it is true that there is nothing unique about the issues in this dispute that would prevent or preclude this court from being able to determine it.

As to the fourth factor, there are or have already been state court proceedings related to this very dispute. The plaintiff informed the court at the hearing that a state court had authorized the disbursement of the escrow funds to the defendant. In addition, there was an underlying state court lawsuit from which the plaintiff claims his right to attorney's fees from the defendant. The court that handled that underlying lawsuit, of course, is typically the court that would handle fee disputes between parties to that lawsuit and their attorneys. Indeed, comity would require that this court defer to that court for that kind of determination.

The fifth factor is not implicated because there is no jurisdictional basis for this dispute in this court other than the merely "related to" jurisdiction of Section 1334(b).

As to the sixth factor, the resolution of the dispute in this adversary proceeding is not connected to the bankruptcy case other than in the sense of providing money that the debtor could use to fund a Chapter 11 plan if he is successful in collecting a fee. There is nothing about the dispute that is integral to disputed confirmation or other bankruptcy issues. There is no bankruptcy reason for this court to be involved in the determination of this dispute.

Because the matter is non-core rather than core, the seventh factor would appear to have no applicability.

As to the eighth factor, there is no procedural or practical problem or delay presented by having the plaintiff use the state court to collect his fee, if he can, and then use the collected funds, if any, to distribute to creditors through a plan to be confirmed in this court.

Under the ninth factor, the court is required to assess the burden that determining the "related to" proceeding will place on the bankruptcy court's docket. The congested nature of this court's docket would clearly motivate the court to avoid reaching out to resolve disputes, such as this one, that it need not resolve. Instead, that congestion would persuade the court to concentrate on resolving bankruptcy disputes that only this court can determine.

Regarding the tenth factor, the events giving rise to the adversary proceeding all took place in West Virginia. Nothing about them relates to Florida or the Middle District of Florida other than the fact that, after the events in question, the plaintiff moved here and filed a bankruptcy case. Although moving to Florida may not necessarily be "forum shopping" in the traditional sense, requiring a defendant with no Florida connections to come here to litigate with the plaintiff a simple prepetition state law contract dispute merely because the plaintiff later moved here is plainly burdensome to the defendant and weighs in favor of having the matter resolved in a court of competent jurisdiction in West Virginia.

Although the defendant has not requested trial by a jury in her answer, it would appear that she would otherwise have a jury trial right. Applying the eleventh factor, this is another reason to abstain in favor of the state court.

The twelfth and last factor—that of the presence of non-debtor parties—would appear to be a neutral factor since this appears to be just a two party dispute.

Taking all of these factors into consideration, the court concludes that abstention under Section 1334(c)(1) is not only desirable but is required in this case.[2]

### Conclusion

■ For these reasons, the court will grant summary judgment in favor of the defendant and against the plaintiff on the

---

**2.** The court notes that, for the very reasons described in this order, neither bankruptcy trustees nor Chapter 11 debtors-in-possession who are represented by bankruptcy counsel seek to collect prepetition accounts in the bankruptcy court.

This proceeding may be only the third or fourth time in the over eight years that I have served on the bankruptcy bench where I have observed a party seeking to invoke the court's "related to" jurisdiction in this manner. One of those in-

turnover claim stated in Count I of the complaint.[3] The court will also abstain from hearing the state law collection claims stated in Counts II and III of the complaint.

Pursuant to the provisions of F.R.B.P. 9021, the court will enter a separate judgment in accordance with this decision subject, of course, to appellate review in the district court. 28 U.S.C. § 158(a)(1). The judgment as to Count I involves a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(1) and (b)(2)(E). Although the judgment as to Count II and Count II involves a "non-core" proceeding within the meaning of 28 U.S.C. § 157(c)(1), as a procedural matter the court may nevertheless enter a final order rather than a proposed order in these circumstances. *See* 28 U.S.C. § 1334(d); *Millsaps v. United States (In re Millsaps),* 133 B.R. 547, 556 (Bankr.M.D.Fla. 1991); *Shop & Go, Inc. v. D.K. Patterson Construction Co. (In re Shop & Go, Inc.),* 124 B.R. 915, 919 n. 3 (Bankr.M.D.Fla.1991).

---

3. When a party moves for summary judgment, the court may grant summary judgment for either party. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982).

stances was another proceeding in this bankruptcy case. *Wood v. Rymer,* Adversary Proceeding No. 97–528. In that proceeding, the court entered an order of abstention upon an oral bench decision on May 19, 1997. The court explained to the plaintiff in that bench decision the legal principles contained in this decision.