Linda DAVIS, Plaintiff,

v.

TIME INSURANCE
COMPANY, Defendant.

Civ. A. No. H88–0148(R).

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Oct. 20, 1988.

Leonard B. Melvin, Jr., Len Melvin, Melvin & Melvin, Laurel, Miss., for plaintiff.

William S. Mullins, III, Kenneth E. Bullock, Gibbes, Graves, Mullins, Bullock, & Ferris, Laurel, Miss., for defendant.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on Motion to Remand filed by the plaintiff Linda Davis and the Court having considered said motion, together with briefs and exhibits in support and response thereto, finds as follows, to-wit:

The present suit is based on an alleged "bad faith" refusal by the defendant Time Insurance Company (Time) to pay benefits to the plaintiff which she alleges are due and owing under the subject policy. The defendant argues that in light of *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Perkins v. Time Insurance Co.,* No. H87–0101(W), —— F.Supp. —— (S.D.Miss. July 29, 1988) (order denying plaintiff's motion to remand), this action is preempted by federal law, more specifically, the Employer Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1001, *et seq.,* and therefore was properly removed. The plaintiff responds by arguing *inter alia* that the action was improperly removed because: (1) the facts do not support a finding a preemption under ERISA; and (2) the circumstances surrounding this action indicate that more than the statutory period of time for removal under 28 U.S.C. §§ 1441 and 1446 elapsed and therefore said removal was performed improvidently and without jurisdiction.

## I. FACTS

On or about October 29, 1983, T.E. Cook Construction Company (Cook Construction) decided to establish a plan or program for the purpose of providing certain benefits to its five full-time employees. Cook Construction applied for benefits which provided for payment to be made to its employees in the event of their death or dismemberment or in the event said employees should incur medical expenses as the result of sickness or accident. It is also apparent that the benefits were intended to extend to certain dependents of full-time employees covered by the plan at said employee's option and expense. Cook Construction chose to provide the said benefits to its employees and their dependents by and through a group insurance policy secured by Time.

Time contends that in providing group insurance benefits to employers having less than ten employees, it does so through a vehicle known as the Time Insurance Multiple Employer Trust (Time MET), which is a legal entity, obstensibly designed for the sole purpose of serving as the policyholder for many small employers. This, Time alleges, is done primarily to provide group insurance at "affordable" rates.

On or about October 29, 1983, Cook Construction, by and through its owner, Mr. T.E. Cook, signed and delivered to Time an Employer Participation Agreement and Application which requested life, major medical and accidental death and dismemberment coverage for its employees under the Time MET trust policy.

On or about October 29, 1983, William R. Davis, a full-time employee of Cook Construction, applied to Time for the purpose of becoming a participant in the plan. He signed and delivered an Employee Enrollment Form requesting coverage under the Time MET group policy for himself and his wife, the plaintiff, Linda Davis. Subsequently, the Employer's Participation Agreement and Application, along with the Employee Enrollment Forms, as executed by all five full-time employees, including William Davis, were duly approved by Time and all of said employees and their quali-fied dependents became covered under the group policy issued on November 1, 1983. Thereafter, a certificate of insurance coverage was issued to each of the employees, including William Davis.

The plaintiff Linda Davis subsequently submitted a claim for medical benefits contending that coverage was required under the subject group insurance plan. Time denied said claim and on or about February 12, 1985, the plaintiff filed her complaint in the Circuit Court of the Second Judicial District of Jones County, Mississippi. On or about August 29, 1988, Time removed the action to this Court.

## II. IS THE GROUP POLICY AT ISSUE COVERED BY ERISA?

 To determine if the group policy at issue is an employee welfare benefit plan and thus governed by the Act an examination of the coverage and definitions provisions must be consulted. 29 U.S.C.A. § 1003, which is the coverage provision of ERISA, directs that:

(a) Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) by both.

For the purposes of ERISA an employee benefit plan is defined in 29 U.S.C.A. § 1002, which advises that:

For the purposes of this subchapter:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or

their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).[1]

Generally speaking, five statutory requirements have evolved which lend insight into whether a particular plan is covered under ERISA, they require: "(1) A plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, unemployment or vacation benefits...., (5) to participants or their beneficiaries." *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732, 738 (7th Cir.1986); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc). The statutory language of ERISA does not specifically define the first two elements; however, case law indicates that in satisfying the requirements "[a] 'plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d at 1373; *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d at 739;

*See also Harris v. Arkansas Book Company*, 794 F.2d 358, 360 (8th Cir.1986); *Scott v. Gulf Oil Corporation*, 754 F.2d 1499, 1504 (9th Cir.1985); and *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 640 F.Supp. 731, 734 (N.D.Ala.1986). In an effort to set forth facts which it believes establish a "plan, fund or program", the defendant Time has submitted affidavits and exhibits which set forth:

(1) that intended benefits were, among others, life accidental death and dismemberment and major medical benefits;

(2) that plaintiff, Linda Davis, was not only aware of the benefits, she applied for them;

(3) that defendant Time provided each covered employee with a Certificate of Insurance which explained the available benefits;

(4) that the class of beneficiaries was readily ascertainable as full-time employees (defined in the employer participation agreement as those working at least 30 hours per week) and their qualified dependents;

(5) that obviously plaintiff was a member of this class, since she filed a claim for benefits as well as this eventual lawsuit;

(6) that the employer, Cook Construction, agreed and did pay the entire premium required for employee coverage under the plan (although there is evidence that the individual employees paid to the employer the percentage of the total premium owed for their individual coverage);

(7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

(8) The term "beneficiary" means a person designated by a participant or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

---

**1.** Section 1002 also defines other terms pertinent to this analysis, to-wit:

(3) The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

(5) The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

(6) The term "employee" means any individual employed by an employer.

(7) that Cook Construction contracted and agreed to be ultimately responsible for the insurance plan of its employees; and

(8) that defendant Time provided the employer with materials that demonstrated the claims procedure for its employees and their qualified dependents to follow.[2]

Although at this point the Court is confident that the plan entered into by Cook Construction on behalf of its employees satisfies all the statutory and precedential requirements for compliance under ERISA, the facts in this case must be analyzed in accordance with those in *Taggart Corporation v. Life & Health Benefits Administration*, 617 F.2d 1208 (5th Cir.1980) before a final determination can be made. The sole issue for consideration in *Taggart* was whether an entity known as the Security Multiple Employer's Trust (SMET) was itself an ERISA plan. Since the SMET in *Taggart*, arguably unlike the present case [3], was a proprietary enterprise, established by independent businessmen for their own personal profit, the Fifth Circuit held that the SMET itself was *not governed* by ERISA. In *Taggart* it was determined that the SMET was set up by entrepreneurs as kind of an "insurance mutual fund" for their own personal profit, and that ERISA was designed to govern welfare plans which are established by employers for the benefit of their employees. *Id.* at 1210. It was determined that the Taggart Corporation had nothing to do with the formation of the SMET and did not participate in SMET's day-to-day operation or administration, and therefore could not be said to have maintained or established the SMET for the benefit of its employees. *Id.* It was also determined that the SMET in *Taggart* was held not to be a "statutory employer" for ERISA purposes. *Id.* This Court is of the opinion that even if the Time MET in this case and the SMET in *Taggart* are considered not to be ERISA plans, unlike *Taggart*, in this case the group medical coverage plan which was established and maintained by Cook Construction for its employees, is an ERISA plan. Clearly, in holding that the subscription to the SMET in *Taggart* was not an employee benefit plan, the Fifth Circuit limited its holding to those situations in which "the purchasing employer neither directly or indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." *Id.* at 1211. In *Taggart* the employer made payments, not to the insurance company, but to the SMET itself. In the case sub judice, the Time MET accepted no premiums from the employer, rather the employer was directed to make payments directly to Time. Furthermore, in *Taggart* the SMET took sole responsibility for selecting an insurance company, the policy, and the coverages available thereunder. In this case, the employer not only selected Time to provide insurance coverage to its employees, but the employer selected the features of the plan such as: the requested effective date, the deductible applicable to medical benefits, accidental medical expense benefits and the period of time during which new employees must be employed before becoming eligible

---

**2.** It should be pointed out that none of the eight points established by the defendant Time, by and through affidavits and exhibits, have been disputed by the plaintiff by affidavit or otherwise. The plaintiff has, however, alleged in her brief that her husband was an independent contractor for Cook Construction; that those who worked for the company paid the premiums each month to one in the group who would convey the money to the defendant Time; that they were not full-time employees but would hire on as different jobs came available; and that Mr. T.E. Cook never directed the premiums to the insurance company nor provided for benefits.

**3.** Time has submitted by affidavit evidence that the Time MET was not organized as a profit making entity; that the Time MET engages in no business except that of being the policyholder for a group policy issued to it; that neither the Time MET nor the trustee can choose an insurer or purchase insurance for any participating employee or employee; that all applications for coverage under the Time MET are made by the employee directly to Time; and that all premiums for insurance coverage provided by an employer unit whose employees are covered under the Time MET policy are billed by Time, remitted directly to Time and are not paid to Time MET. The plaintiff has presented no evidence to refute any of the above assertions.

for such benefits. By the execution of the Employer Participation Agreement, Cook Construction, unlike the Taggart Corporation, provided that the employees had an interest in the subject policy and that the employer assumed control and responsibility for administration, including, but not limited to, responsibility for the group policy and its benefits as they related to the employer unit.

Finally, *Taggart* is distinguishable from the instant case in that in *Taggart* the president and sole employee of Taggart Corporation subscribed to the SMET for benefits for himself and his family. The district court concluded that "[t]he transaction simply involves the purchase of insurance by the plaintiff, Stanley M. Kansas, for himself and his family...." *Taggart Corp. v. Efros*, 475 F.Supp. 124, 127 (S.D. Tex.1979). On the other hand, in the present case, Cook Construction entered into the Employer Participation Agreement with the purpose of providing insurance to its five full-time employees and their qualified dependents. In conclusion, the Court is of the opinion that the acquisition of insurance was not, as in *Taggart*, the bare purchase of insurance by one employee, but was a situation where a statutory "employer" established a group insurance plan for the benefit of its employees. Therefore, in light of *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the plan at issue is governed by ERISA and state law to the contrary is preempted. The next step is therefore, whether the removal of this cause was proper, some three years and six months after it was filed, and some sixteen months after the Supreme Court's decision in *Pilot Life*.

### III. REMOVAL

In order to properly remove a case to federal court the defendant must comply with the applicable statutory directives. When this action was initially filed on or about February 12, 1985, in the Circuit Court of the Second Judicial District of Jones County, Mississippi, it was apparent that diversity of citizenship existed and that the amount in controversy exceeded

$10,000.00. *See* 28 U.S.C.A. § 1332. Therefore, at that time the defendant was permitted to remove the case to this Court within thirty (30) days of the receipt of the complaint. *See* 28 U.S.C.A. §§ 1441 and 1446. Time obviously elected not to take advantage of the removal provisions at that time.

On August 29, 1988, the defendant Time, based on what it perceived to be valid grounds, removed this case. For insight on why it removed this case so late in litigation, the defendant directs the Court's attention to *Perkins v. Time Insurance Company, supra*, and of course, *Pilot Life, supra*. Throughout its brief, Time takes great pains to persuade this Court that but for the differences of the employer and the employees, *Perkins* and the case at bar are identical. The similarities, Time argues, include the type of benefits sought, the number of employees to be covered, the group policy ultimately issued, the insurance company and the MET, as well as the fact that *Perkins* was also removed from the Circuit Court of the Second Judicial District of Jones County, Mississippi.

Accepting that Time's assessment of the similarities of this case and *Perkins* are correct, Time then argues that because Judge Wingate found that the plan entered into in *Perkins* was "maintained and established" as a welfare benefit plan under ERISA and that the case was properly removed, that necessarily this Court should unwaveringly find accordingly. However, there are several problems with that logic. First, and foremost, it should be pointed out that as this Court has previously and independently concluded, the plan in this case like that in *Perkins* is such that it is subject to the ERISA provisions. Furthermore, even though Judge Wingate needs no confirmation from this Court, his decision that *Perkins* was properly removed is also absolutely on point.

The question becomes why *Perkins* was considered as having been properly removed. As with the case at bar, in *Perkins*, the plaintiffs argued that the case was not removable because the time period

for removal as provided for under the applicable statute had lapsed. However, the defendant's response to Judge Wingate was that *Pilot Life*, handed down by the United States Supreme Court on April 6, 1987, for the first time acknowledged that ERISA preempted state tort law with respect to welfare benefit plans, and that subsequently it removed *Perkins* within thirty (30) days of that decision.

In finding the removal in *Perkins* was proper, Judge Wingate astutely determined that:

> A body of case law proclaims that where a new basis for removal changes the character of the litigation so as to make it substantially a new suit, a defendant will be allowed to exercise his right of removal as to this new development, even if defendant earlier eschewed removal on another available ground. *Cliett v. Scott*, 233 F.2d 269 (Fifth Cir., 1956); *Board of Supervisors of Jackson County v. H.K. Porter Co., Inc.*, 424 F.Supp. 100 (S.D.Mississippi, 1976); *Craig Food Industries v. Taco Time International, Inc.*, 469 F.Supp. 516 (N.D., Utah, 1979); *Lacy v. Mid–Continent Casualty Co.*, 247 F.Supp. 667 (S.D., Texas, 1965). Generally, these holdings reflect amendments of the pleadings which resulted in the advancement of different theories for recovery. However, this Court perceives no difference between a situation where an amended complaint adds a new federal question and one where a recent United States Supreme Court decision invigorates a pleading with federal character. In both instances, a federal basis is supplied where previously none was.

*Id.* At ———–———.

The creation of the new "federal basis" that Judge Wingate referred to resulted from the decision in *Pilot Life* and the ramifications that invariably flowed therefrom. However, if as the defendant points out, this case and *Perkins* are substantially identical, why then was this case, as was *Perkins*, not removed within thirty (30) days of the *Pilot Life* decision. The issues of law (i.e. the application of ERISA and the propriety of removal) in *Perkins* and this case are identical, the defendant cannot argue that this case piggy backs *Perkins* and at the same time argue that it is identical to it. If this action had been removed, as *Perkins* was, within thirty (30) days of the decision in *Pilot Life*, this Court would have invariably held identical to Judge Wingate. However, such was not the case and removal at this late date is indeed suspect.

When considering the question of removal, the ERISA provisions do lend some insight. 29 U.S.C.A. § 1132 concerns civil enforcement and directs in part that:

> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> (A) for the relief provided for in subsection (c) of this section, or
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

■ Furthermore, with respect to the issue of jurisdiction, 29 U.S.C.A. § 1132 provides that:

> (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Case law has confirmed that suit brought under ERISA and pursuant to 29 U.S.C.A. § 1132(a)(1)(B) by a participant or beneficiary to enforce rights to present or future benefits under an ERISA plan may be brought in either federal or state court. *Essington Metal Works, Inc. v. Retirement Plans of America, Inc.*, 609 F.Supp. 1546 (D.C.Pa.1985); *Duffy v. Brannen*, 148 Vt. 75, 529 A.2d 643 (1987); *Shields v. C.D. Johnson Marine Services, Inc.*, 342 Pa.Super. 501, 493 A.2d 701 (1985); *Imler v. Southwestern Bell Tel. Co.*, 8 Kan.App.2d 71, 650 P.2d 712 (1982); *General Dynam-*

*ics Corp. v. Harris,* 581 S.W.2d 300 (Tex. Civ.App.1979). Although as set forth above, there is an available forum for certain ERISA cases in state court, this Court does not possess the authority or inclination to modify the plaintiff's complaint in such a way as to specifically set forth the damages provided under 29 U.S.C.A. § 1132(a)(1)(B). The Court is cognizant that by finding that this action is governed by ERISA, it has, in effect, modified the plaintiff's complaint to that extent that it has precluded, as a matter of law, the recovery of actual damages beyond the alleged benefits due and owing, and punitive damages; however, unless and until the plaintiff's complaint is formally amended to set forth allegations which can be pursued by the limited concurrent jurisdictional venue of the state court, this Court is of the opinion that plaintiff's Motion for Remand is not well taken and should be denied at this time.