**Agnes Christiane CLEGG,
et al., Plaintiffs,**

v.

**BRISTOL–MYERS SQUIBB
CO., et al., Defendants.**

No. 3:02–CV–589–J–32TEM.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 3, 2002.

Peter Ticktin, Bruce A. Chaimowitz, Scholl, Ticktin & Rosenberg, P.A., Boca Raton, FL, Michael Mosher, Office of Michael Mosher, Paris, TX, for plaintiff.

Francis M. McDonald, Jr., Sarah A. Long, Carlton Fields, P.A., Orlando, FL, Timothy A. Pratt, Jeffery A. Kruse, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for defendants.

### FINAL ORDER OF REMAND

CORRIGAN, District Judge.

This case is before the Court on Plaintiffs' Motion for Abstention and Remand (Doc. 14), supported by a memorandum of law (Doc. 15) and affidavits (Docs. 16 & 17). Defendants filed a response in opposition (Doc. 24) and with the Court's permission, plaintiffs filed a brief in reply (Doc. 28). On August 13, 2002, the Court held oral argument on the motion, the record of which is incorporated by reference.

On September 11, 2002, the undersigned issued a Report and Recommendation to the District Judge then assigned to the case, recommending that Plaintiffs' Motion for Abstention and Remand be granted and that the case be remanded to state court, but that the request for attorney's fees and costs be denied. *See* Doc. 31. No objections to the Report and Recommendation have been filed and the time in which to do so has now passed.

Since the issuance of the Report and Recommendation, this case has been reassigned to the undersigned for final disposition. *See* Doc. 33 (notice of reassignment).[1] Accordingly, it is hereby

**ORDERED:**

1. There being no objections to the Report and Recommendation (Doc. 31), the undersigned now **adopts** the attached Report and Recommendation in full as the decision of the Court for the reasons stated therein.

2. Plaintiffs' Motion for Abstention and Remand (Doc. 14) is **GRANTED** and this case is hereby **REMANDED** to the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida. Plaintiffs' request for attorney's fees and costs is **DENIED**.

3. The Clerk shall **close** this file.

### REPORT AND RECOMMENDATION[1]

CORRIGAN, United States Magistrate Judge.

#### I. Status

This case is before the Court on Plaintiffs' Motion for Abstention and Remand

---

1. The undersigned was sworn in as a United States District Judge on September 14, 2002.

1. Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommenda-

tion. Failure to do so shall bar the party from a *de novo* determination of a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(q) and 4.20, United

(Doc. 14), which has been referred to the undersigned for the rendering of this Report and Recommendation (*see* Doc. 18, Order of Reference). Plaintiffs filed a memorandum of law (Doc. 15) and affidavits (Docs. 16 & 17) in support of their motion, defendants filed a response in opposition (Doc. 24) and, with the Court's permission, plaintiffs filed a brief in reply (Doc. 28). On August 13, 2002, the Court held oral argument on the motion, the record of which is incorporated by reference (*see* Doc. 29, minutes of hearing) and the motion is now ripe for consideration.

## II. Background

Plaintiffs Agnes Clegg and her husband filed this silicone gel breast implant product liability suit against defendants Bristol–Myers Squibb Company and Medical Engineering Corporation in Florida state court on August 5, 1997, alleging state law claims of strict liability, negligence, fraud and negligent misrepresentation.[2] *See* state court docket sheet and complaint (on left side of Volume 1 of Court file). Defendants do not dispute that either as originally filed or shortly thereafter, this case

was removable based on diversity jurisdiction.[3] Defendants further acknowledge that they did not elect to exercise their right to remove this case to federal court at that time. Following some delay and changes in counsel, the parties engaged in discovery practice, including interrogatories, requests for admissions, production of documents, and taking depositions of plaintiffs, Ms. Clegg's physician, and plaintiffs' expert witness. *See* Doc. 17. In November 2001 and again on April 1, 2002, this case was set on the state court's August 19, 2002 trial calendar. *See* state court docket sheet, entries # 72, 89. As the trial date approached, the parties filed more than thirty motions which are still pending on the docket, including motions for summary judgment, motions in limine, and discovery motions. *See* state court docket sheet.

On May 23, 2002, following some investigative work by defendants' counsel, defendants obtained a Chapter 7 bankruptcy file from the United States Bankruptcy Court for the Western District of Washington from which they learned that plaintiffs had

States District Court for the Middle District of Florida.

2. In March 2002, plaintiffs moved for leave to amend the complaint to assert a claim for punitive damages under state law. On June 3, 2002 plaintiffs again filed a motion for leave to amend the complaint and filed an amended complaint on that date. *See* state court docket sheet, entries # 85, 137, 138; Doc. 17 (affidavit of plaintiffs' counsel).

3. Although the face of the state court complaint does not contain the facts necessary to determine whether the case was originally removable, plaintiffs' counsel has submitted an affidavit in support of Plaintiffs' Memorandum of Law in Support of Motion for Abstention and Remand which states that plaintiffs were citizens of the State of Washington at the time they filed their state court complaint and have since moved to Florida. *See* Doc. 17. The affidavit further states that defendant

Bristol–Myers Squibb Company is a Delaware company whose principal place of business is New York and defendant Medical Engineering Corporation is a Delaware corporation whose principal place of business is Wisconsin. *Id.* Although the complaint claims damages of an amount in excess of $15,000 for each of the two plaintiffs, plaintiffs' counsel's affidavit states that at the time the state court case was commenced, plaintiffs provided defendants with a questionnaire which indicated that plaintiffs were seeking damages "well in excess of the $75,000 jurisdictional minimum" for federal court diversity jurisdiction, defendants knew plaintiffs had opted out of a class action settlement offer of $175,000 and in November 1997 plaintiffs rejected a settlement offer from defendants. *Id.* Defendants have not contested the accuracy of these facts and acknowledged at oral argument that they did not pursue an earlier opportunity to remove the case to federal court based on diversity jurisdiction.

filed a voluntary petition for relief in that bankruptcy court in January 2000 and had listed the instant case as a substantial pending asset of the bankruptcy estate. *See* Doc. 24 at 2. Although defendants had notice that plaintiffs had filed a previous Chapter 11 bankruptcy which had been resolved, the May 23, 2002 receipt of the Chapter 7 bankruptcy file was the first notice defendants had that the instant case was a potential asset of a bankruptcy action and therefore potentially "related to" the bankruptcy action.[4] On June 20, 2002 defendants removed this case to federal court invoking the Court's jurisdiction pursuant to 28 U.S.C. § 1334(b), which grants federal courts original jurisdiction over civil proceedings which arise under or are related to a Title 11 bankruptcy case.[5]

Plaintiffs do not seriously dispute that this case is "related to" a Title 11 bankruptcy case within the meaning of 28 U.S.C. § 1334(b). Although defendants are neither debtors nor creditors in the Washington bankruptcy action, and notwithstanding that the pending Washington bankruptcy action will have no effect on the actual litigation of this case, Eleventh Circuit authority dictates that if the proceeds of a potential judgment in plaintiff's favor "could conceivably have an effect on the estate being administered in bankruptcy," the action is sufficiently related to the bankruptcy action to confer federal jurisdiction over the civil proceeding. *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990) (quotations and citations omitted) (joining the majority of Circuits that have adopted formulation of "related to bankruptcy" jurisdiction set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984)[6]). *See also, In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999) ("key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad"). Under this formulation, this case is sufficiently "related to" the pending Washington bankruptcy action to confer federal jurisdiction. *See also* Doc. 16 (affidavit of Chapter 7 bankruptcy trustee) at ¶¶ 2 & 3 (affirming that this case "is an asset of the [Washington] bankruptcy estate" and "is 'related to' the bankruptcy case"). Thus, defendants have properly invoked this Court's "related to bankruptcy" jurisdiction under § 1334(b) as a basis for removal.

However, notwithstanding that this case is "related to bankruptcy" and therefore would normally be removable, plaintiffs have timely filed a motion to remand pur-

---

4. The Court rejects without further discussion plaintiffs' assertion that defendants were on notice of the Chapter 7 bankruptcy action filed in January 2000 by either the questionnaire defendants received following commencement of this suit (*see* portion of questionnaire attached as Exhibit 3 to Doc. 17), which pre-dated the commencement of the Washington bankruptcy action by nearly three years, or Ms. Clegg's May 16, 2001 deposition in which she briefly references the earlier, resolved Chapter 11 bankruptcy action (*see* relevant deposition transcript pages attached as Exhibit 1 to Doc. 24). The Court also rejects plaintiffs' unsupported contention that defendants had an affirmative duty to determine earlier whether a bankruptcy action was pending. *Cf. Beasley v. Personal Finance Corp.*, 279 B.R. 523, 530 (S.D.Miss.2002) (rejecting argument that defendants had any obligation to exercise diligence in "ferreting out grounds for removal;" thus removal was not untimely when triggered by defendants' discovery through internet search of plaintiffs' then seven month old bankruptcy petition).

5. Chapter 7 (Liquidation) and Chapter 11 (Reorganization) are both bankruptcy proceedings governed by Title 11 of the United States Code. *See* 11 U.S.C. §§ 701 et seq., 1101 et seq.

6. *Pacor* was subsequently overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).

suant to 28 U.S.C. § 1447(c) arguing that defendants waived their right to remove when they failed to remove based on diversity of citizenship in 1997 when the state court case was first filed. Plaintiffs further contend that even if the Court were to find that defendants properly removed this case to federal court, the Court should remand this case based on principles of equity which permit the Court to abstain from exercising jurisdiction over cases related to bankruptcy.

### III. Waiver of Removal Rights

■ "Removal jurisdiction is limited through strict construction of the removal statutes." *Cacciatore v. Liberty Life Assur. Co. of Boston*, 85 F.Supp.2d 1282, 1283 (M.D.Fla.2000). *See also Russell Corp. v. American Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir.2001) (removal rights are to be strictly construed). Because "[f]ederal courts are courts of limited jurisdiction," "there is a presumption against the exercise of federal jurisdiction [ ] such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp.*, 264 F.3d at 1050 (citation omitted). *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir.1998) ("it is axiomatic that ambiguities [concerning matters of removal] are generally construed against removal") (citations omitted); *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir.1998) (removal jurisdiction to be construed narrowly with doubts resolved in favor of remand). The Court should not construe removal statutes in a manner that expands the federal court's jurisdiction, even if the result permits plaintiffs to intentionally avoid such jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097, 1097 n. 12 (11th Cir.1994).

■ Here, plaintiffs have challenged the removal, claiming that defendants waived the right to remove by failing to adhere to the provisions of 28 U.S.C. § 1446(b) which state:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> *If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant,* through service or otherwise, *of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable,* except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of this action.

28 U.S.C. § 1446(b) (emphasis added). Plaintiffs argue that defendants waived their right to remove this case when they failed to remove on the basis of diversity jurisdiction, which jurisdiction was apparent at the commencement of this case in state court in 1997.

Defendants acknowledge that they could have removed based on diversity jurisdiction at the commencement of this case, but maintain that their decision not to remove on that ground did not limit their ability to remove the case on an entirely different basis (here, the "related to bankruptcy" jurisdiction) at a later point in the case when that other basis became apparent. Defendants contend that under the second paragraph of § 1446(b), they timely filed their notice of removal by filing it within

thirty days of receipt of the initial paper (the Washington bankruptcy file) from which they first ascertained that the case was removable under this Court's "related to bankruptcy" jurisdiction. That basis for jurisdiction was not available upon the filing of the case in state court in 1997 because the Washington bankruptcy action was not filed until January 2000 and defendants therefore could not have invoked the Court's "related to bankruptcy" jurisdiction to remove the case initially.

Defendants claim "there is no time limit" within which independent grounds for removal, such as "related to bankruptcy" jurisdiction, must be presented (beyond that such grounds must be presented within thirty days of notice thereof). Doc. 24 at 7. Defendants cite generally to the Federal Rules of Civil Procedure as support for this proposition. *Id.* However, the plain language of the removal statute does not support defendants' interpretation. The first paragraph of § 1446(b) requires that removal occur within thirty days of receipt of the "initial pleading" in the case. The second paragraph of § 1446(b) allows for removal at later points in the case but *only* "[i]f the case stated by the initial pleading is not removable ..." 28 U.S.C. § 1446(b).

To effectuate defendants' reading of the statute requires the complete deletion of the first phrase of the second paragraph of the removal statute, so that removal could be accomplished any time within thirty days after presentation of a new basis for removal without regard to whether the case was initially removable.[7] Given the strict construction with which the Courts are required to read removal statutes, and following the authority of numerous courts, the Court declines to adopt the reading urged by defendants and finds that the plain language of the statute does not permit removal, even on an entirely new basis, if the initially removable case was not timely removed. *See, e.g., Wilson v. Intercollegiate (Big Ten) Conference Athletic Association,* 668 F.2d 962, 965 (7th Cir. 1982), *cert. denied,* 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 70 (1982) ("Section 1446(b) of the Judicial Code provides that if a case filed in a state court, though removable to federal court, is not removed by petition filed within 30 days of the receipt of the complaint, it is not removable thereafter."); *Dunn v. Gaiam, Inc.,* 166 F.Supp.2d 1273, 1278–79 (C.D.Cal.2001) ("Once the right to removal is waived, it is generally waived for all time ... regardless of subsequent changes in the case."); *Sehl v. Safari Motor Coaches, Inc.,* 2001 WL 940846, *4 (N.D.Cal. Aug. 13, 2001) ("[S]ince [defendant] failed to remove the case within thirty days of the original complaint, which was removable at that time, [defendant] thereby waived its right to file a subsequent removal even though the complaint was amended to create a new basis for removal."); *Samura v. Kaiser Foundation Health Plan, Inc.,* 715 F.Supp. 970, 972 (N.D.Cal.1989) ("Changes to a complaint that create a new basis for removal do not undo the original waiver.

---

**7.** Defendants' interpretation could alternatively be accomplished if language such as the following is added to the first phrase of the second paragraph:

> If the case stated by the initial pleading is not removable *upon the same grounds defendant newly asserts,* a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (added language italicized and underlined). Of course, the statute contains no such language.

If a case is removable from the outset, it must be removed within the initial thirty-day period specified by § 1446(b); subsequent events do not make it 'more removable' or 'again removable.' ") (citations and quotations omitted).

However, as acknowledged by many of these cases and others, there is a narrow judicially created exception under which a defendant who fails to exercise his removal rights on the first available basis may have those rights "revived" by the occurrence of certain later events. In *Wilson v. Intercollegiate (Big Ten) Conference Athletic Association*, 668 F.2d 962 (7th Cir.1982), Judge Posner authored a frequently cited opinion addressing a question very similar to the question presented by the motion now before this Court: "if a case initially filed in state court is removable to federal court but the defendant waives his right to remove, under what circumstances will that right revive if the plaintiff subsequently amends his complaint to add new federal claims?" *Wilson*, 668 F.2d at 964.[8]

In *Wilson*, the complaint as filed in state court alleged constitutional violations of the plaintiff's equal protection and due process rights. *Id.* The defendants did not attempt to remove the case to federal court and the case proceeded in state court where the judge issued various rulings favorable to the plaintiff. *Id.* Months later, the plaintiff amended his complaint, quantifying his damages for the first time and adding several new additional counts including alleged violations of various federal civil rights statutes, a First Amendment claim, a full faith and credit clause claim and a Title IX claim. *Id.* The defendants promptly removed the case to federal

court and the plaintiff moved to remand. *Id.* The Court denied the motion and eventually granted judgment for the defendants on all counts. *Id.* Plaintiff appealed the final order and the denial of his motion to remand. *Id.* Judge Posner described the scenario as follows:

> The defendants chose not to remove. They must have regretted this decision as they saw the case progress through the state-court system favorably to Wilson [the plaintiff]. Then Wilson (or rather his attorney) made what must have seemed to the defendants a colossal tactical blunder: amending the complaint to add a scattershot of new federal claims that no doubt struck the defendants (as they struck the district court) as insubstantial, and thereby reviving their right to remove and giving them a chance to escape from what had turned out to be an unfavorable state forum. Wilson was hoist with his own petard—and there we would leave him were it not for the presence in this case of policy concerns, jurisdictional in nature and hence not waivable, relating to the power of the federal courts to divest state courts of jurisdiction over cases properly submitted to them.

*Id.* at 965.

In resolving the question, the Seventh Circuit discussed the thirty day deadline in the removal statute and described its two-fold purpose:

> [1] to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and

---

**8.** The difference between the question presented in *Wilson* and the one before this Court is that, unlike in *Wilson* where the new basis for federal jurisdiction arose by the filing of an amended complaint, here it arose by defendants' discovery of the Washington bankruptcy proceeding which invokes the Court's "related to bankruptcy" jurisdiction under 28 U.S.C. § 1334(b). This distinction is unimportant to the analysis.

[2] to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

*Id.*

 However, the Court acknowledged the existence of a judicially created "revival exception" under which removal rights may be revived in two types of cases: where a plaintiff deliberately misleads a defendant about the true nature of the case until the thirty day removal limit expires or when an amended complaint is filed which "fundamentally alter[s]" the complexion of the case to such a degree that the amended complaint creates "an essentially new lawsuit." *Id.* at 965–66. The Court stressed that the revival exception is available only in those very narrow circumstances where the facts of the case are compelling enough to risk contravention of the two-fold purpose of the thirty day removal limitation. *Id.* at 966. The Court found such facts were not present in the *Wilson* case because there was no contention the plaintiff intended to mislead the defendants with his pleadings and the amendments to those pleadings "did not change the target of [his] attack or the nature of the relief sought." *Id.* at 966. The Court found the facts of *Wilson* "illustrate[d] very nicely the purposes behind the 30–day limitation" imposed by the removal statute and therefore reversed the district court's order denying the motion to remand and vacated the district court's final judgment. *Id.*

Courts that have considered the "revival exception" have overwhelmingly found the facts of their cases did not warrant its application. *See, e.g., Clarson v. Southern General Life Ins. Co.,* 694 F.Supp. 847 (M.D.Fla.1987) (citing *Wilson* and finding differences between claims alleged in first and second amended complaints were not sufficient to justify removal given defendant's voluntary submission to state court jurisdiction on the first amended complaint). *See also, Louisiana Farm Bureau Casualty Ins. Co. v. Michelin Tire Corp.,* 207 F.Supp.2d 524, 526 (M.D.La. 2002) (declining to apply revival exception to restore defendant's lost removal rights because change in party did not "transform the character" of the lawsuit); *Dunn v. Gaiam, Inc.,* 166 F.Supp.2d 1273 (C.D.Cal.2001) (citing *Wilson* and finding revival exception did not apply to removal of amended complaint containing RICO claim where defendants did not timely remove original complaint containing claims preempted by federal copyright law); *Sehl v. Safari Motor Coaches, Inc.,* 2001 WL 940846 (N.D.Cal. August 13, 2001) (finding defendant's failure to timely remove on Magnuson–Moss claim contained in original complaint constituted waiver of right to subsequent removal of amended complaint which was subject to federal question jurisdiction through an alleged libel action preempted by Fair Credit Reporting Act; further finding underlying facts of original and amended complaint sufficiently similar such that no exception to waiver should apply); *Pearson v. Gerber Products Co.,* 788 F.Supp. 410 (W.D.Ark.1992) (original claim, though pled as one for breach of contract, was preempted by ERISA; thus even though plaintiff sought different relief through amended claim for ERISA benefits, allegations about defendant's conduct remained the same in original and amended pleadings and earlier waiver of removal rights could not be revived); *Samura v. Kaiser Foundation Health Plan, Inc.,* 715 F.Supp. 970, 972 (N.D.Cal.1989)(citing *Wilson* and finding new basis for removal (federal HMO act) did not "undo the original waiver" of removal (based on Unfair Practices Act claim) or warrant application of judicially-

created revival exception); *McKenna v. Brassard,* 704 F.Supp. 309 (D.Mass.1989) (citing *Wilson* and finding addition of wrongful death claim did not create any significant change in litigation which might permit revival of waived right to remove under diversity); *Miller v. Martin,* 1987 WL 46753 (M.D.N.C. July 20, 1987) (citing *Wilson* and finding addition of First Amendment claim to case with Fair Labor Standards Act claim did not justify revival of removal right because underlying facts were unchanged, case had been pending in state court over 500 days, amendment did not significantly increase defendant's exposure to liability, numerous state law claims in case were best decided by state forum, and plaintiff had not intentionally lulled defendant into waiving removal right).[9]

As stated in one of these recent opinions, "given the strict construction which the Court must apply to the removal statutes, on procedural as well as substantive issues, the wisdom of [the] judicially-created [revival] exception might be questioned as an initial matter" and, if it survives at all, it "must in any case be of an exceedingly narrow scope, to function exclusively as an 'escape hatch' in those cases" where the facts are such that "the purposes of the 30-day limitation would not be served

by enforcing it." *Dunn,* 166 F.Supp.2d at 1279 (citing *Wilson*).

One recent case in which the court found the facts did merit application of the revival exception is *Johnson v. Heublein, Inc.,* 227 F.3d 236 (5th Cir.2000). In *Johnson,* the defendants did not remove the case initially although removal was available based on diversity. *Id.* at 239. Following eighteen months of litigation and a partial assignment of claims, the plaintiffs and two former defendants, now co-plaintiffs, filed an amended complaint reasserting the original claims against the remaining defendants and asserting new substantive claims as well. *Id.* Defendants removed based on diversity and the plaintiffs filed a motion to remand. *Id.* In reviewing the denial of the motion on appeal, the *Johnson* Court, citing *Wilson,* found the facts merited application of the judicially-created revival exception because the amended complaint resulted in a complete re-alignment of the parties, the new allegations bore "no resemblance whatsoever" to those of the original complaint, and the defendants were now "confronted with a suit on a construction contract involving exposure to substantial compensatory and punitive damages, instead of only a questionable conversion claim by a competing creditor with an apparently inferior lien,"

---

**9.** Still other courts have found the exception may not be available at all where defendants assert diversity jurisdiction as a basis for removal more than one year after the filing of a suit, given that Congress did not adopt the revival exception when amending the removal statute in 1988. *See, e.g., Burke v. Atlantic Fuels Marketing Corp.,* 775 F.Supp. 474, 475–76 (D.Mass.1991) (declining to disregard plain mandate of statute by relying on line of cases (including *Wilson*) which place "judicial gloss" on removal statute especially in light of legislative history reflecting Congressional intent to curtail access to diversity jurisdiction through 1988 amendment). *See also, Service Asset Mgmt. Co. v. Hibernia Corp.,* 80 F.Supp.2d 626, 629 (E.D.Tex.2000) (discuss-

ing 1988 amendment to removal statute and Congressional "intent to prohibit removal when substantial progress has already been made on a case"); *Jeffrey M. Goldberg & Assoc. v. Collins, Tuttle & Co., Inc.,* 739 F.Supp. 426, 430 n. 4 (N.D.Ill.1990) (leaving undecided "the thorny issue of how [the revival exception described by] *Wilson* meshes with the 1988 amendment's one year limitation on the removal of cases when diversity provides the grounds for removal"). *But see, Johnson v. Heublein, Inc.,* 227 F.3d 236, 243 (5th Cir.2000) (finding revival exception "was not superseded or affected by the 1988 amendment" and was therefore available to permit removal of action based on diversity jurisdiction).

thus starting "a virtually new, more complex, and substantial case . . . upon which no significant proceedings ha[d] been held." *Id.* at 242. Therefore, the Fifth Circuit determined that the purpose of the thirty day limitation on removal would not be thwarted under the facts of that case and affirmed the denial of plaintiffs' motion to remand. *Id.* at 242. In so ruling, the *Johnson* Court rejected the plaintiffs' argument that removal was not available because the defendants did not have a new statutory basis for removal, stating that "[n]o court has ever suggested that the addition of a federal question claim is a prerequisite to the availability of the revival of removal right exception." *Id.* at 244.

Another case in which the facts merited application of the revival exception is *Cliett v. Scott,* 233 F.2d 269 (5th Cir.1956), *cert. denied,* 352 U.S. 917, 77 S.Ct. 215, 1 L.Ed.2d 123 (1956). In *Cliett,* plaintiffs filed "suit for an accounting of moneys" to collect a judgment against non-resident defendants related to the accounts on 700 acres of land. *Cliett,* 233 F.2d at 269–70.[10] After several years of litigation in state court, plaintiffs filed an amended petition asserting for the first time title to the entire 700 acre tract. *Id.* at 270. Defendants promptly removed the case to federal court (presumably on the basis of diversity jurisdiction) and plaintiffs moved to remand claiming "the defendants had voluntarily submitted to the jurisdiction of the state court and had lost their right to remove." *Id.* In affirming the district court's final judgment and denial of the motion to remand, the Fifth Circuit held

that the filing of the amended petition by the plaintiffs created "an entirely new and different suit," over which "defendants' right to remove revived." *Id.* at 271.

 Thus, two of the few reported cases which have permitted revival of removal rights (*Johnson* and *Cliett*) permitted removal on the same grounds originally available. Considering these two cases as well as the overwhelming majority of those which declined to apply the revival exception, it appears that the ground asserted for removal, and whether and how that ground differs from the removal ground initially available, is not generally a controlling factor in determining whether to permit late removal. *See also, S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 492 (5th Cir.1996) ("The prohibition against removal 'on the same ground' does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the case removable.") (citations and quotations omitted).

Notwithstanding this authority, defendants claim that what sets this case apart from others in which courts have refused to accept removal jurisdiction is that here the statutory basis upon which defendants waived their right to remove (diversity jurisdiction) is different from the statutory basis upon which they now seek removal ("related to bankruptcy" jurisdiction) and that the new basis "restarts the clock" for purposes of removal. Defendants cite several cases as evidence that "[a] well-established body of case law demonstrates that

---

**10.** The opinion does not explicitly say whether the original suit was removable based on diversity jurisdiction. The defendants were non-residents and the suit for accounting involved 700 acres of land. *Cliett,* 233 F.2d at 269–70. The amount in controversy required to confer diversity jurisdiction at the time was $3000. *See* 72 Stat. 415 (increasing amount

in controversy from $3000 to $10,000 in 1958). Additionally, language in the opinion that defendants "consented" to the state court's jurisdiction over the original suit, *Cliett,* 233 F.2d at 271, and that their "right to remove revived," *id.,* implies that defendants had the ability to remove the original suit had they elected to do so.

waiver of one jurisdictional ground is not a waiver of a different, subsequently arising ground for federal jurisdiction." Doc. 24 at 19. For a variety of reasons, this authority is either unpersuasive or distinguishable.

In *Davis v. Time Ins. Co.*, 698 F.Supp. 1317 (S.D.Miss.1988), the court considered whether the defendant, who had waived an opportunity to remove the case originally on diversity jurisdiction, could remove the case under ERISA following a Supreme Court decision which made clear that ERISA preempted state law on the issue. *Davis*, 698 F.Supp. at 1321–22. The *Davis* court found the claim was entirely preempted by ERISA and the court could not therefore remand unless plaintiff amended his complaint to state claims over which the state would have concurrent jurisdiction.[11] *Id.* at 1322. In arriving at its decision, the court did discuss the creation of a new "federal basis" as being a reason to consider permitting late removal, but further noted that the new federal basis was cause for allowing removal in the face of an "earlier eschewed removal on another available ground" when the new basis "changes the character of the litigation so as to make it substantially a new suit." *Id.* (quotations and citations omitted). Thus, it was not merely the creation of a new federal basis which resulted in renewed removal rights but the fact that the new basis resulted in substantial changes in the character of the litigation—the same reason advocated by *Wilson* and its progeny for the application of the revival exception. Thus, contrary to defendants' implication, the *Davis* opinion does not suggest that the removal statute contains an outright exception where the newly stated ground is a different statutory basis than the earlier eschewed ground.

Nor do most of the cases relied on by *Davis* and cited by defendants advocate this proposition. First, the *Cliett* case, as described above, permitted removal based on diversity following an apparent waiver of removal on diversity grounds because the amended petition filed by the plaintiffs created "an entirely new and different suit." *Cliett*, 233 F.2d at 271. Likewise, in *Board of Supervisors of Jackson County v. H.K. Porter Co., Inc.*, 424 F.Supp. 100 (S.D.Miss.1976), the court considered the change to the tenor of the case created by an amendment, permitting a late removal on grounds of diversity jurisdiction upon a finding that both parties "faced a different kind of proof" following an amendment to the plaintiff's petition. *Id.* at 102. In *Lacy v. Mid–Continent Casualty Co.*, 247 F.Supp. 667 (S.D.Tex.1965), the defendants attempted to remove by invoking diversity jurisdiction following an amendment to the plaintiff's petition. *Lacy*, 247 F.Supp. at 669. The court granted plaintiff's motion to remand, finding that the case was most likely originally removable on diversity and that the doubts should be resolved in favor of remand. *Id.* at 674. Thus, this case is not helpful to defendants either.

In fact, the only case cited by defendants which lends any support to their proposition is *Craig Food Indus. Inc. v. Taco Time Int'l, Inc.*, 469 F.Supp. 516 (D.Utah 1979). There, the defendants failed to timely remove based on diversity jurisdiction at the outset of the case. *Craig*, 469 F.Supp. at 520. The court permitted removal following an amendment to the complaint which raised a trademark claim under federal law. *Id.* In permitting the removal, the court simply stated that "the courts [ ] have expanded removal jurisdiction with the doctrine that *if the amendment of the complaint provides a*

**11.** There is no reported subsequent history available to indicate whether plaintiff followed the suggestion to amend the complaint in an attempt to achieve a remand.

*new basis for removal* or makes the action 'a new suit,' the thirty-day removal period begins to run anew." *Id.* at 521 (emphasis added). Although the court cited no case law in support of this statement and did not state whether the amendment changed the complexion of the case in any significant way, it did reference § 3732 of a 1976 version of *Federal Practice and Procedure. Id.* The current version of that section summarizes the state of the law and recognizes the judicially-created exception for revival of removal rights (citing *Wilson,* among other cases) which prevents a defendant, willing to litigate one claim in state court, from otherwise being forced to remain in the forum to adjudicate "a completely different claim." 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3732 (3d ed.1998). While not entirely clear, this treatise statement appears more consistent with *Wilson.* In any event, the Court finds the numerous other cases which have analyzed application of the judicially-created revival exception to be more carefully reasoned and persuasive than *Craig.*

Although neither the Court's nor the parties' research has uncovered any case in which "related to bankruptcy" jurisdiction is the newly asserted basis for removal following an earlier waiver of removal on other grounds, the language of the removal statute and the judicially-created revival exception are the appropriate tools with which to measure the propriety of defendants' removal.[12] As discussed above, *supra* pp. 29–30, the language of the statute is unavailing to defendants as it plainly states that removal beyond the initial thirty day period following filing or service of a complaint is permitted only when "the initial pleading is not removable." 28 U.S.C. § 1446(b). Here the initial complaint was removable based on diversity and defendants failed to remove.

■ Thus, the Court must determine whether those expired removal rights are due to be revived.[13] "The right to revive must be determined in each case with reference to its purposes and those of the 30–day limitation on removal to which it is an exception, and against a backdrop of general considerations relating to the proper allocation of decision-making responsibilities between state and federal courts." *Wilson,* 668 F.2d at 965. Considering the facts of this case and the relevant case law, *see supra* pp. 30–34, the Court finds application of the revival exception is not warranted.

This case was filed in state court in 1997. The existence of the Washington bankruptcy proceeding, filed in 2000, does

---

12. Most of the available authority concerning allegedly late removal and consideration of the revival exception are cases in which removal has been sought following the filing of an amended complaint. However, the language of the removal statute contemplates that events other than the filing of an amended pleading may prompt a defendant to remove and the revival exception has been applied as well in such situations. *See, e.g., Davis,* 698 F.Supp. at 1321–22 (permitting removal following change in the law). *Cf., Morsani v. Major League Baseball,* 79 F.Supp.2d 1331, 1333 (M.D.Fla.1999) (finding change in the law was not "an event triggering a renewed right of removal").

13. There being no Eleventh Circuit authority on point (though *Cliett,* the early Fifth Circuit case described above, offers some guidance), the Court assumes, for the sake of this Report and Recommendation, that the judicially-created revival exception is available in the Eleventh Circuit given appropriate circumstances. However, considering the strict construction the Eleventh Circuit has traditionally given to the removal statute, *see supra* p. 27, it is not certain that the Eleventh Circuit would even adopt the revival exception. If it did, it would likely be available in only the rarest of circumstances.

nothing to alter the scope of defendants' potential liability in this case, the alignment of the parties, or the allegations of the complaint. Indeed, at oral argument, defendants were hard pressed to offer any difference in the litigation posture of this case due to the pendency of the bankruptcy proceeding. Moreover, the Washington bankruptcy trustee's affidavit states that the bankruptcy court routinely administers damages awards assessed by state courts and it is his view that the bankruptcy estate is best served by the continuation of this case in state court. *See* Doc. 16. The claims raised in the complaint all arise under Florida law. The state court proceedings in this case have been pending (albeit with an extended period of delay) for over five years and the case had been set for trial in state court to begin in August 2002. There is no allegation plaintiff engaged in any trickery to prevent defendant from removing this case and in fact, as conceded by defendants, the grounds for removal based on diversity jurisdiction were present at the time the suit was filed in 1997. In sum, considering the plain language of the removal statute and the purpose of the thirty day limit prescribed therein, the Court concludes that the history and circumstances of this case do not support revival of defendants' expired removal rights.

## IV. Equitable Principles

Although the undersigned finds that defendants waived their right to remove by failing to timely remove based on diversity jurisdiction, and that no grounds exist to revive that removal right, the Court has alternatively considered whether the appli-

cation of equitable principles (which the Court would be required to weigh if it found defendants' removal rights had been revived) would favor a remand to state court. As stated above, defendants relied on the "related to bankruptcy" jurisdiction as a basis for removing this case to federal court. *See* 28 U.S.C. § 1334(b). The federal court is permitted to abstain from hearing a proceeding related to a case in bankruptcy "in the interests of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Additionally, upon removal of a claim related to bankruptcy, the Court "may remand such claim" "on any equitable ground." 28 U.S.C. § 1452(b). Upon this authority, plaintiffs urge the Court to exercise its discretion to either abstain or remand this case.[14]

"The reasons for remanding a case under 28 U.S.C. § 1452(b), or abstaining from hearing a case under 28 U.S.C. § 1334(c)(1), are essentially identical, and the Court's analysis is basically the same for determining the applicability of either type of relief." *Luxford v. Dalkon Shield Claimant's Trust,* 1997 WL 1048338, *2 (D.Md. June 24, 1997) (citations omitted). Courts have applied several variations of a multi-factor test to determine whether remand on equitable grounds or abstention in a proceeding "related to bankruptcy" are warranted and the parties have cited at least three different, though similar, formulations. *See* Doc. 24 at 11–18, Doc. 15 at 13–19. *See also, Luxford,* 1997 WL 1048338 (and cases cited therein).

---

14. "Any time a court remands a case, it is also abstaining from hearing that case. Abstention means only that the federal court will not hear the proceeding. At least three courses of action are open to a federal court once it has decided to abstain. First, the court can retain jurisdiction, but abstain from [ ] deciding the case while the parties obtain[ ] a state court determination on the state law issues. The other options after abstention are to dismiss the proceeding or to remand the case to state court." *In re Chiodo,* 88 B.R. 780 (W.D.Tex.1988) (citations omitted).

Defendants suggest that the list of "equitable considerations" described in *River Cement Co. v. Bangert Bros. Const. Co.*, 852 F.Supp. 25 (D.Colo.1994) should guide the Court. Those considerations are "1) duplication of judicial resources; 2) uneconomical use of judicial resources; 3) effect of remand on the administration of the bankruptcy estate; 4) [whether the] case involves questions of state law better addressed by a state court; 5) comity; 6) prejudice to the involuntarily removed parties; 7) lessened possibility of an inconsistent result; and 8) expertise of the court where action originated." *River Cement Co.*, 852 F.Supp. at 27 (citations omitted).

Defendants additionally suggest that the list of discretionary abstention considerations announced in *In re Wood*, 216 B.R. 1010 (Bankr.M.D.Fla.1998) are appropriate guidelines for this Court to consider. Those factors are: "(1) [t]he effect or lack thereof on the efficient administration of the [bankruptcy] estate if a court abstains[;] (2) [t]he extent to which state law issues predominate over bankruptcy issues[;] (3) [t]he difficulty or unsettled nature of applicable law[;] (4) [t]he presence of a related proceeding commenced in state court or other non-bankruptcy court[;] (5) [t]he jurisdictional basis, if any, other than 28 U.S.C. § 1334[;] (6) [t]he degree of relatedness or remoteness of the proceeding to the main bankruptcy case[;] (7) [t]he substance rather than form of an asserted 'core' proceeding[;] (8) [t]he feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court[;] (9) [t]he burden o[n] the bankruptcy court's docket[;] (10) [t]he likelihood that the commencement of the proceeding in bankruptcy court involved forum shopping by one of the parties[;] (11) [t]he existence of a right to a jury trial[;] and (12) [t]he

presence in the proceeding of non-debtor parties." *In re Wood*, 216 B.R. at 1014.

Using the factors suggested by defendants, the Court finds each of them to be neutral, inapplicable, or weighing in plaintiffs' favor. Maintenance of this case in federal court will duplicate judicial resources in that it will take a substantial amount of time for this Court to "get up to speed" with a case that has been pending on the state court docket for five years. Additionally, there are no claims involving federal law at issue and the Florida state court is perfectly able (and in fact best suited) to adjudicate the Florida law claims in this case. Furthermore, before removal, the parties were preparing for trial under the assumption that Florida evidentiary and procedural standards would apply and the maintenance of this case on the federal court docket will cause the parties, including the involuntarily removed plaintiffs, to re-plead a substantial number of the already pending motions and to tailor or re-engage in discovery, especially that involving their expert witnesses, under a different standard than that which would apply if the case were in state court. Moreover, plaintiffs will be prejudiced by the significant delay between the time it would take this case to reach the federal court trial docket compared to the immediately pending setting the parties had in state court.

As for the factors affecting the bankruptcy estate, resolution of this case involves state law, not bankruptcy law; the degree of relatedness between this case and the pending Chapter 7 bankruptcy proceeding is marginal in that the only effect this case will have on the bankruptcy proceeding is that the bankruptcy court will administer the proceedings of any judgment entered in plaintiffs' favor in this case; the defendants are not parties to the bankruptcy proceeding; the only other ba-

**38**

sis in the case for invoking this Court's jurisdiction is diversity and defendants waived their ability to remove on that ground; and the bankruptcy trustee urges the Court to abstain due to the delay to the bankruptcy proceeding that will result if the case remains on the federal docket and further states that the bankruptcy court, as it does routinely, can competently administer state court judgments.

Taking all of these factors into consideration, the Court finds numerous equitable grounds for remand and virtually no reason why this Court should keep the case. This Court should abstain from accepting jurisdiction pursuant to 28 U.S.C. § 1334(c)(1) and remand the case to state court under 28 U.S.C. § 1452(b).

### V. Attorneys Fees

 Upon remand, the Court is authorized to award attorneys fees incurred as a result of removal pursuant to 28 U.S.C. § 1447(c). While the Court was originally inclined to recommend an award of attorneys fees to compensate plaintiffs for the prejudice suffered by having this case removed after five years of state court litigation and at a time when the state court trial setting was only weeks away, upon review of the case law, it appears that the more sound approach is to decline to award fees because a reasonably objective basis for removal was present. *See, e.g., Martin v. Mentor Corp.,* 142 F.Supp.2d 1346, 1349 (M.D.Fla.2001) (declining to award fees where authority was split and defendant acted reasonably in pursuing removal). Here, although the Court has ultimately recommended rejecting defendants' efforts to remove, such efforts were not without some basis in law and there was no binding Eleventh Circuit authority directly on point. Additionally, even though the Court has also rejected defendants' equitable arguments, the Court does not fault defendants for their efforts to per-

suade the Court in matters of equity. For these reasons, the Court recommends that plaintiffs' request for attorneys fees and costs be denied.

### VI. Recommendation

For the reasons stated above, the undersigned recommends that Plaintiffs' Motion for Abstention and Remand (Doc. 14) be **GRANTED** and that this case be remanded to state court, but that the request for attorney's fees and costs be **DENIED.**

Dated Sept. 11, 2002.